**CARRIERS INSURANCE COMPANY,**
**Plaintiff,**

v.

**Emmitt GRIFFIE, an Individual, and the**
**Hartford Accident & Indemnity Com-**
**pany, a corporation, Defendants.**

**Civ. A. No. 68-1167.**

United States District Court,
W. D. Pennsylvania.

April 18, 1973.

Allen T. Lane, Wayman, Irvin, Trushel & McAuley, Pittsburgh, Pa., for defendants.

Thomas J. Reinstadtler, Jr., Pittsburgh, Pa., for plaintiff.

OPINION

DUMBAULD, District Judge.

This is a dispute between two insurance companies, one of which (Carriers), after making a concededly fair and reasonable settlement with an accident victim, now seeks indemnity from the defendant company (Hartford) on the theory that plaintiff's policy contains an excess coverage clause while defendant's contains a pro-rata clause.[1]

---

1. See Walter v. Dunlap, 368 F.2d 118, 121 (C.A.3, 1966).

However, Hartford contends that the excess coverage rule would apply only if in fact both policies were applicable to the accident, and denies the existence of coverage under Hartford's policy, relying upon exclusions from coverage contained in that policy:

It is agreed that such insurance as is afforded by the policy for Bodily Injury Liability, for Property Damage Liability and for Basic Medical Payments with respect to any automobile described above or designated in the policy as subject to this endorsement does not apply:

(a) to any person or organization, or any agent or employee thereof, other than the named insured, engaged in the business of transporting property by automobile for others;

(b) while the automobile or any trailer attached thereto is used to carry property in any business;

(c) while the automobile is being used in the business of any person or organization to whom the automobile is rented.

In our judgment clauses (b) and (c) are operative in the case at bar, with the result that Hartford is not liable, and hence is not required to indemnify Carriers.

The stipulated facts show that one Emmitt Griffie was what is commonly called a "broker" or "owner-operator" who was driving, at the time of the accident, a vehicle owned by him but leased under a three year lease to a certificated interstate carrier having operating authority from the Interstate Commerce Commission. The lease provided that during its continuance "vehicles shall be in the exclusive possession, use and control" of said carrier.[2] At the time of the accident the carrier's name and ICC number was displayed on the equipment.

Griffie had been directed by carrier's dispatcher to pick up a load for the carrier on that day, and before making the pickup to have the equipment inspected, pursuant to company policy, at a garage selected by the carrier and at the cost of carrier.[3]

The carrier's inspection policy was obviously part of its business as a common carrier.[4] The equipment was clearly being "used in the business" of the carrier at the time it ran over the victim's foot at the inspection station selected by the carrier. Clause (c) thus is operative to relieve Hartford from coverage under its policy.

But clause (b) is also operative. The mere fact that no cargo was being handled at the particular moment when the accident occurred does not mean that the equipment was not "used to carry property in any business." It was regularly so used to carry property in the carrier's business as a trucker. If the intent had been to extend coverage except when the equipment was actually hauling a load, it would not have been difficult to express such an intention clearly. In the absence of return loads, there is often much empty movement by common carriers, which they of course seek to minimize but never can

2. This language is broader than that used in Mellon Bank v. Sophie Lines, 289 F.2d 473, 475 (C.A.3, 1961), which was limited to the protection of the public and shippers. Cf. Allstate Ins. Co. v. Liberty Mutual Ins. Co., 368 F.2d 121, 125 (C.A.3, 1966). The lease also bore a notation in its upper left hand corner reading "Bobtail-Hartford Accd & Indemnity." This apparently refers to the Hartford policy endorsement A-1221 4th Rev. 5—'59 called "Truckmen Insurance for Non-Trucking Use", issued at a low premium of $68. These circumstances indicate that any coverage under the Hartford policy would clearly be secondary to the policy applicable to the trucking operation itself, and would exclude liability when the equipment was being operated in connection with the business of a common carrier for hire.

3. Stipulation, 9(d)–(f).

4. The fact that the owner under paragraph 4 of the lease must "maintain the equipment in good and efficient working order, bearing all operating costs and expenses" does not negate the necessity of inspections as a part of carrier's business.

entirely avoid. Likewise equipment often moves empty to a shipper's dock to pick up a load. In fact that was in substance what was being done here when the accident occurred. It can not successfully be contended that incidental empty movements are not part of a common carrier's business of carrying property. Clause (b) relieves Hartford of liability on its policy.