# Syllabus

| | Chief Justice: | Justices: |
|---|---|---|
| | Robert P. Young, Jr. | Michael F. Cavanagh |
| | | Stephen J. Markman |
| | | Mary Beth Kelly |
| | | Brian K. Zahra |
| | | Bridget M. McCormack |
| | | David F. Viviano |

This syllabus constitutes no part of the opinion of the Court but has been prepared by the Reporter of Decisions for the convenience of the reader.

Reporter of Decisions:
Corbin R. Davis

HUNT v DRIELICK
HUBER v DRIELICK
LUCZAK v DRIELICK

Docket Nos. 146433, 146434, and 146435. Argued March 5, 2014 (Calendar No. 3). Decided June 26, 2014.

Marie Hunt, as personal representative of the estate of Eugene Hunt; Brandon Huber; and Thomas and Noreen Luczak brought separate actions in the Bay Circuit Court against Roger Drielick, the owner of Roger Drielick Trucking; Corey Drielick, a truck driver employed by Drielick Trucking; Great Lakes Carriers Corporation (GLC); Great Lakes Logistics & Services, Inc. (GLLS); Sargent Trucking, Inc.; and others following a multivehicle accident in which Eugene Hunt died and Noreen Luczak and Brandon Huber were seriously injured. Drielick Trucking had generally leased its semi-tractors to Sargent, but in October 1995, Roger orally terminated the lease agreement with Sargent and began doing business with Bill Bateson, one of the owners of GLC. In January 1996, Bateson had dispatched Corey to pick up and deliver a trailer of goods stored on GLC's property. Driving the semi-tractor without an attached trailer, Corey proceeded to GLC's truck yard, but less than two miles away from the yard, he was involved in the accident. The court, William J. Caprathe, J., consolidated the actions. Empire Fire and Marine Insurance Company, which insured Drielick Trucking's semi-tractors under a non-trucking-use policy (also called a bobtail policy), denied coverage and refused to defend under the policy's business-use and named-driver exclusions. Plaintiffs settled with Sargent and GLC and later entered into consent judgments with the Drielicks and Drielick Trucking. The parties also entered into an agreement in which they agreed that Roger would assign the rights under the Empire insurance policy to plaintiffs, Sargent, and GLC. Sargent and GLC agreed to help plaintiffs' collection efforts from Empire in exchange for a portion of any proceeds received from Empire. Sargent and GLC filed writs of garnishment against Empire. In response, Empire moved to quash. The court denied Empire's motion and entered an order to execute the consent judgments, reasoning that the business-use exclusion did not apply and that the named-driver exclusion was invalid under MCL 500.3009(2). Empire appealed, and the Court of Appeals, HOEKSTRA, P.J., and COOPER and K. F. KELLY, JJ., affirmed in part, reversed in part, and remanded in an unpublished opinion per curiam, issued October 5, 2004 (Docket Nos. 246366, 246367, and 246368). The panel affirmed the trial court's ruling regarding the named-driver exclusion but reversed the trial court's ruling regarding the business-use exclusion, holding that further factual determinations were necessary because the fact that the semi-tractor was traveling without a trailer at the time of the accident created a question of fact regarding whether the truck was being used for a business purpose at that time. The panel noted that the policy exclusions

were clear but whether the accident was a covered event was not, explaining that Roger had orally revoked his lease with Sargent, and, contrary to federal regulations, there was no written lease with GLC. On remand, the trial court concluded that even if there had been a lease between Roger and GLC, the business-use exclusion did not preclude coverage. Empire again appealed, and the Court of Appeals, RONAYNE KRAUSE, P.J., and BORRELLO and RIORDAN, JJ., reversed, holding that the first clause of the business-use exclusion, which precluded coverage if the injury or damage occurred while a covered vehicle was used to carry property in any business, applied despite the fact that the truck was not actually carrying property at the moment of the accident. 298 Mich App 548 (2012). Plaintiffs sought leave to appeal, and the Supreme Court granted their applications. 495 Mich 857 (2013).

In a unanimous opinion by Justice CAVANAGH, the Supreme Court *held*:

A clause in an automobile insurance policy excluding coverage while a covered vehicle is used to carry property in any business excludes coverage with respect to a semi-tractor only when the accident occurred during the time that property was attached to the semi-tractor that was used in any business.

1. The parties agreed that the policy provided coverage at the time of the accident, but the business-use exclusion in the policy contained two separate clauses that potentially eliminated Empire's liability under the policy. Under the first clause, the policy did not apply while a covered vehicle was used to carry property in any business. Under the commonly used meanings of the terms in the clause, there would be no coverage if the accident occurred while the semi-tractor was engaged in conveying property from one place to another in any business, that is, while the semi-tractor was physically attached to property and the property was carried in a business. The Court of Appeals erred by placing too great an emphasis on the definition of the phrase "is used" in the clause while overlooking the import of the phrase "carry property." The Court of Appeals interpretation of the first clause, which essentially defines the clause by whether a semi-tractor is driven in the business of carrying property, is too broad because in the commercial-trucking industry, semi-tractors are intended and designed precisely to carry property and, therefore, would always be used for the purpose of carrying property when used in any business. Because it was undisputed that at the time of the accident, the semi-tractor was driven without attached property, the first clause of the business-use exclusion did not preclude coverage in this case.

2. Under the second clause of the business-use exclusion, the policy did not apply while a covered vehicle was used in the business of anyone to whom the vehicle was leased or rented. To determine that issue, further findings of fact by the trial court were necessary. There was no written lease regarding the use of Drielick Trucking's semi-tractors, as required by federal regulations. While an oral arrangement or course of conduct might have existed between GLC and Drielick Trucking, however, whether that agreement constituted a lease for purposes of the policy was a threshold factual determination that had not yet been fully considered.

Reversed and remanded.

©2014 State of Michigan

# Opinion

Chief Justice:          Justices:
Robert P. Young, Jr.   Michael F. Cavanagh
                        Stephen J. Markman
                        Mary Beth Kelly
                        Brian K. Zahra
                        Bridget M. McCormack
                        David F. Viviano

FILED June 26, 2014

S T A T E   O F   M I C H I G A N

SUPREME COURT

MARIE HUNT, Personal Representative for the
ESTATE OF EUGENE WAYNE HUNT,

      Plaintiff/Counter-Defendant/Cross-
      Defendant-Appellant,

v                                          No. 146433

ROGER DRIELICK, doing business as
ROGER DRIELICK TRUCKING, and
COREY DRIELICK,

      Defendants/Counter-Plaintiffs/Cross-
      Plaintiffs/Third-Party-Defendants/
      Counter-Defendants,

and

GREAT LAKES CARRIERS CORP.,

      Defendant/Cross-Defendant-Appellee,

and

GREAT LAKES LOGISTICS & SERVICES, INC.,
and MERMAID TRANSPORTATION, INC.,

      Defendants/Cross-Defendants,

and

SARGENT TRUCKING, INC.,

       Defendant-Appellee,

and

NOREEN LUCZAK and THOMAS LUCZAK,

       Third-Party-Defendants/Counter-
       Defendants-Appellees,

and

EMPIRE FIRE AND MARINE INSURANCE
COMPANY,

       Garnishee Defendant-Appellee.
_____

BRANDON JAMES HUBER,

       Plaintiff-Appellant,

v                                      No.  146434

COREY DRIELICK and ROGER DRIELICK,
doing business as ROGER DRIELICK TRUCKING,

       Defendants/Third-Party-Plaintiffs,

and

GREAT LAKES CARRIERS CORP.,

       Defendant-Appellee,

and

GREAT LAKES LOGISTICS & SERVICES, INC.,
and MERMAID TRANSPORTATION, INC.,

Defendants,

and

SARGENT TRUCKING, INC.,

Defendant-Appellee,

and

GREAT LAKES CARRIERS, INC.,

Third-Party-Defendant,

and

EMPIRE FIRE AND MARINE INSURANCE
COMPANY,

Garnishee Defendant-Appellee.

_____

THOMAS LUCZAK and NOREEN LUCZAK,

Plaintiffs-Appellants,

v                                    No.  146435

COREY DRIELICK and ROGER DRIELICK,
doing business as ROGER DRIELICK TRUCKING,

Defendants-Third-Party-Plaintiffs,

and

GREAT LAKES CARRIERS CORP.,

Defendant-Appellee,

and

GREAT LAKES LOGISTICS & SERVICES, INC.,
and MERMAID TRANSPORTATION, INC.,

Defendants,

and

SARGENT TRUCKING, INC.,

Defendant-Appellee,

and

GREAT LAKES CARRIERS, INC.,

Third-Party-Defendant,

and

EMPIRE FIRE AND MARINE INSURANCE
COMPANY,

Garnishee Defendant-Appellee.

_____

BEFORE THE ENTIRE BENCH

CAVANAGH, J.

This appeal involves Empire Fire and Marine Insurance Company's obligations under an "Insurance for Non-Trucking Use" policy issued to Drielick Trucking. The policy contains a business-use exclusion, which includes two clauses that Empire argues preclude coverage in this case. The Court of Appeals agreed that the first clause precludes coverage when the covered vehicle is not carrying property at the time of the accident, as in this case. Thus, the Court of Appeals expressly declined to address the second clause relating to leased covered vehicles. *Hunt v Drielick*, 298 Mich App 548, 553 n 2; 828 NW2d 441 (2012). We hold that the Court of Appeals erred for the reasons explained in this opinion and reverse the judgment of the Court of Appeals. Additionally,

4

we remand this case to the trial court for further fact-finding to determine whether Drielick Trucking and Great Lakes Carriers Corporation (GLC) entered into a leasing agreement for the use of Drielick Trucking's semi-tractors as contemplated under the policy's clause related to a leased covered vehicle.

## I. FACTS AND PROCEDURAL HISTORY

Roger Drielick owns Drielick Trucking, a commercial trucking company. It seems that throughout most of the year in 1995, Drielick Trucking leased its semi-tractors to Sargent Trucking (Sargent). Around October 1995, Roger orally terminated the lease agreement with Sargent and began doing business with Bill Bateson, one of the operators of GLC, the other being his wife at the time, Jamie Bateson.

On January 12, 1996, Bill Bateson dispatched Corey Drielick, a truck driver employed by Drielick Trucking, to pick up and deliver a trailer of goods stored on GLC's property. While driving the semi-tractor without an attached trailer, Corey picked up his girlfriend and proceeded to GLC's truck yard.[1] When he was less than two miles away from the yard, Corey was involved in a multivehicle accident. Eugene Hunt died, and Noreen Luczak and Brandon Huber were seriously injured.

Marie Hunt (on behalf of her deceased husband), Thomas and Noreen Luczak, and Huber filed suits against Corey and Roger Drielick, Drielick Trucking, Sargent, and

---

[1] This case involves a semi-tractor driven "bobtail," which means without an attached trailer, as opposed to a semi-tractor driven with an attached trailer that is empty. See *Prestige Cas Co v Mich Mut Ins Co*, 99 F3d 1340, 1343 (CA 6, 1996) (defining "bobtail"), and *Zurich Ins Co v Rombough*, 384 Mich 228, 230; 180 NW2d 775 (1970), citing *Ayers v Kidney*, 333 F2d 812, 813 (CA 6, 1964) (noting that driving a semi-tractor with an attached, but empty, trailer is termed "deadheading").

GLC. Empire, which insured Drielick Trucking's semi-tractors under a non-trucking-use, or bobtail, policy, denied coverage and refused to defend under the policy's business-use and named-driver exclusions. Plaintiffs settled with Sargent and GLC. Plaintiffs later entered into consent judgments with the Drielicks and Drielick Trucking. The parties also entered into an "Assignment, Trust, and Indemnification Agreement," wherein they agreed that Roger Drielick would assign the rights under the insurance policy with Empire to plaintiffs, Sargent, and GLC. Sargent and GLC agreed to help plaintiffs' collection efforts from Empire in exchange for a portion of any proceeds received from Empire.

Sargent and GLC filed writs of garnishment against Empire. In response, Empire filed a motion to quash, arguing again that the policy exclusions apply, among other things. The trial court denied Empire's motion and entered an order to execute the consent judgments, reasoning that the business-use exclusion does not apply and the named-driver exclusion is invalid under MCL 500.3009(2).[2] The Court of Appeals affirmed the trial court's ruling regarding the named-driver exclusion but reversed the trial court's ruling regarding the business-use exclusion, holding that further factual

---

[2] MCL 500.3009(2) states:

> If authorized by the insured, automobile liability or motor vehicle liability coverage may be excluded when a vehicle is operated by a named person. Such exclusion shall not be valid unless the following notice is on the face of the policy or the declaration page or certificate of the policy and on the certificate of insurance: Warning—when a named excluded person operates a vehicle all liability coverage is void—no one is insured. Owners of the vehicle and others legally responsible for the acts of the named excluded person remain fully personally liable.

6

determinations were necessary because the fact that the semi-tractor "was traveling bobtail at the time of the accident, creat[ed] a question of fact whether the truck was being used for a business purpose at that time." *Hunt v Drielick*, unpublished opinion per curiam of the Court of Appeals, issued October 5, 2004 (Docket Nos. 246366, 246367, and 246368), p 5. The Court mentioned that the policy exclusions are clear but "whether this accident was a covered event is not," explaining that Roger Drielick orally revoked his lease with Sargent, and, contrary to federal regulations, there was no written lease with GLC.[3] *Id*.

On remand, the trial court concluded that, "even if there was a lease between Drielick and [GLC]," the business-use exclusion does not preclude coverage. On appeal, the Court of Appeals reversed, holding that the first clause of the business-use exclusion—precluding coverage if injury or damage occurred "while a covered 'auto' is used to carry property in any business"[4]—applies, despite the fact that the truck was not actually carrying property at the moment of the accident. *Hunt*, 298 Mich App at 555-557, citing *Carriers Ins Co v Griffie*, 357 F Supp 441, 442 (WD Pa, 1973).

Plaintiffs sought leave to appeal, which this Court granted.[5]

---

[3] See 49 CFR 376.11; 49 CFR 376.12.

[4] As used in the policy, "auto" is defined as "a land motor vehicle, trailer, or semitrailer designed for travel on public roads but does not include 'mobile equipment.' " References throughout this opinion to coverage will be to either "auto" or "vehicle."

[5] We asked the parties to address the following:

> (1) whether a lease agreement is legally implied between Roger Drielick Trucking and Great Lakes Carriers Corporation under the facts of the case and under applicable federal regulation of the motor carrier industry; and (2) if so, whether the Court of Appeals erred in resolving this case on the

## II. STANDARD OF REVIEW

This case involves the interpretation and application of an insurance policy, which is a question of law reviewed de novo. *Cohen v Auto Club Ins Ass'n*, 463 Mich 525, 528; 620 NW2d 840 (2001).

## III. ANALYSIS

An insurance policy is similar to any other contractual agreement, and, thus, the court's role is to "determine what the agreement was and effectuate the intent of the parties." *Auto-Owners Ins Co v Churchman*, 440 Mich 560, 566; 489 NW2d 431 (1992). "[W]e employ a two-part analysis" to determine the parties' intent. *Heniser v Frankenmuth Mut Ins Co*, 449 Mich 155, 172; 534 NW2d 502 (1995). First, it must be determined whether "the policy provides coverage to the insured," and, second, the court must "ascertain whether that coverage is negated by an exclusion." *Id*. (citation and quotation marks omitted). While "[i]t is the insured's burden to establish that his claim falls within the terms of the policy," *id*., "[t]he insurer should bear the burden of proving an absence of coverage," *Fresard v Mich Millers Mut Ins Co*, 414 Mich 686, 694; 327 NW2d 286 (1982) (opinion by FITZGERALD, C.J.). See, also, *Ramon v Farm Bureau Ins Co*, 184 Mich App 54, 61; 457 NW2d 90 (1990). Additionally, "[e]xclusionary clauses in insurance policies are strictly construed in favor of the insured." *Churchman*, 440

---

basis of the first clause of the business use exclusion in the non-trucking (bobtail) policy issued by Empire Fire and Marine Insurance Company, instead of on the basis of the second clause, which excludes coverage for " '[b]odily injury' or 'property damage' . . . while a covered 'auto' is used in the business of anyone to whom the 'auto' is leased or rented." [*Hunt v Drielick*, 495 Mich 857 (2013).]

Mich at 567. See, also, *Group Ins Co of Mich v Czopek*, 440 Mich 590, 597; 489 NW2d 444 (1992) (stating that "the exclusions to the general liability in a policy of insurance are to be strictly construed against the insurer"). However, "[i]t is impossible to hold an insurance company liable for a risk it did not assume," *Churchman*, 440 Mich at 567, and, thus, "[c]lear and specific exclusions must be enforced," *Czopek*, 440 Mich at 597.

## A. THE POLICY

At issue is the proper interpretation of the bobtail insurance policy. " 'Bob-tail' in trucking parlance is the operation of a tractor without an attached trailer," and "[f]or insurance purposes, . . . it typically means coverage 'only when the tractor is being used without a trailer or with an empty trailer, and is not being operated in the business of an authorized carrier.' " *Prestige Cas Co v Mich Mut Ins Co*, 99 F3d 1340, 1343 (CA 6, 1996) (citations omitted). The relevant portions of the bobtail insurance policy in this case state:

A. COVERAGE:

We will pay all sums an "insured" legally must pay as damages because of "bodily injury" or "property damage" to which this insurance applies, caused by an "accident" and resulting from ownership, maintenance or use of a covered auto . . . .

\* \* \*

B. EXCLUSIONS:

This insurance does not apply to any of the following:

\* \* \*

9

13.  BUSINESS USE:

> "Bodily injury" or "property damage" while a covered "auto" is used to carry property in any business or while a covered "auto" is used in the business of anyone to whom the "auto" is leased or rented.

## B.  THE BUSINESS-USE EXCLUSION

Because the parties agree that the policy provided coverage at the time of the accident,[6] we must decide whether the business-use exclusion applies to preclude coverage.  *Churchman*, 440 Mich at 567 (stating that "coverage under a policy is lost if any exclusion within the policy applies to an insured's particular claims").  The business-use exclusion includes two separate clauses that could apply to a covered vehicle that may prevent Empire's liability under the policy.  Specifically, the policy does not apply "[1] while a covered 'auto' is used to carry property in any business or [2] while a covered 'auto' is used in the business of anyone to whom the 'auto' is leased or rented." *Mich Pub Serv Co v City of Cheboygan*, 324 Mich 309, 341; 37 NW2d 116 (1949) (stating that the word "or" is used as "used to indicate a disunion, a separation, an alternative").  See, also, *GC Timmis & Co v Guardian Alarm Co*, 468 Mich 416, 421; 662 NW2d 710 (2003) (stating that words and clauses must be read in context of the preceding and following words and phrases).

---

[6] The parties do not dispute that Drielick Trucking's semi-tractor involved in the accident falls under the policy's coverage provision.  That is, they do not dispute whether the semi-tractor at issue was a covered "auto," which, as we have noted, is defined by the policy as "a land motor vehicle, trailer, or semitrailer designed for travel on public roads but does not include 'mobile equipment.' "

## 1. THE FIRST CLAUSE

The business-use exclusion's first clause states that there is no coverage under the policy "while a covered 'auto' is used to carry property in any business." Considering the commonly used meaning of the undefined terms of the clause to ascertain the contracting parties' intent, *Czopek*, 440 Mich at 596, the word "while" means "[a]s long as; during the time that," *The American Heritage Dictionary of the English Language* (1981). Further, "use" is defined as " 'to employ for some purpose; put into service[.]' " *Hunt*, 298 Mich App at 556, quoting *Random House Webster's College Dictionary* (2001). See, also, *The American Heritage Dictionary of the English Language* (1981) (defining "employ" as "[t]o engage in the services of; to put to work"). Finally, "carry" is defined as "1. To bear or convey from one place to another; transport . . . . 3. To serve as a means for the conveyance or transmission of . . . . 4. To hold or bear while moving . . . ." *Id*. Applying these definitions, the clause makes clear that there is no coverage when the accident occurs during the time that the semi-tractor is engaged in conveying property from one place to another in any business.

More specifically, we conclude that coverage under the first clause is precluded only during the time that a semi-tractor is physically attached to property and the property is carried in a business. "[W]e must enforce the language of this contract as it is written." *Czopek*, 440 Mich 596-597. It follows that the parties intended the phrase "*carry* property" to mean just that—coverage can only be precluded during the time that the semi-tractor is used to actually transport property in a business. (Emphasis added.) See generally *Prestige*, 99 F3d at 1343 (explaining that bobtail policies typically provide coverage "when the tractor is being used *without a trailer*") (emphasis added). Similarly,

we must give meaning to all terms of the contract in order to effectuate the parties' intent. *Churchman*, 440 Mich at 566. If the parties had intended to preclude coverage irrespective of whether property was actually attached to the semi-tractor at the time of the accident, there would have been no need to include the phrase "carry property" in the clause. The Court of Appeals' analysis, which reached the opposite conclusion, highlights this point.

The Court of Appeals held that the property does not have to be attached to the semi-tractor at the time of the accident for the clause to apply; rather, the Court held that the clause applies "during an interval of time when the truck was employed for *the purpose of* carrying property in the trucking business." *Hunt*, 298 Mich App at 556 (emphasis added). The Court of Appeals reasoned that its conclusion is compelled by the definition of the phrase "is used" in the clause. *Hunt*, 298 Mich App at 557 (explaining that to interpret the clause to require that the property must be attached in order for the clause to apply would "disregard the word 'while' or the phrase 'is used' ").

However, the Court of Appeals erred by placing too great an emphasis on the definition of the phrase "is used," while overlooking the import of the phrase "carry property." In the commercial-trucking industry, semi-tractors are intended and designed precisely to *carry* property and, therefore, would always be used "for the purpose of carrying property," *id*. at 556, when used in any business. Thus, under the Court of Appeals' broad interpretation, the clause is essentially defined by whether a semi-tractor is driven in the business of carrying property. If the parties had intended that the clause's scope be defined solely by whether the semi-tractor was driven in a business, the policy

12

could have simply stated that there is no coverage "while the covered auto is used in any business."

As previously mentioned, in order to give the phrase "carry property" meaning, *Churchman*, 440 Mich at 567, we conclude that the clause was intended to more narrowly preclude coverage during the time that the semi-tractor is physically carrying attached property in a business. See, also, *id*. (stating that exclusionary clauses in insurance contracts are strictly construed). Notably, like the first clause, the scope of the business-use exclusion's second clause is in part defined by whether the semi-tractor is used in a business, but the parties chose not to further qualify the second clause with the phrase "carry property." Accordingly, our interpretation of the first clause does not disregard the phrase "is used" but, rather, appreciates the intended meaning of that phrase *and* the phrase "carry property."

In concluding that the first clause does not require the semi-tractor to actually be carrying property at the time of the accident, the Court of Appeals relied on *Griffie*, 357 F Supp at 442, which interpreted a similar exclusionary clause under a bobtail insurance policy and stated, in dicta, that the clause applied to preclude coverage because "[t]he mere fact that no cargo was being handled at the particular moment when the accident occurred does not mean that the equipment was not 'used to carry property in any business.' " *Griffie* reasoned that the equipment "was regularly so used to carry property in the carrier's business"; thus, "[i]f the intent had been to extend coverage except when the equipment was actually hauling a load, it would not have been difficult to express such an intention clearly." *Id*. at 442.

13

*Griffie*, like the Court of Appeals in this case, conflated whether the policy's clause requires that a semi-tractor be physically carrying attached property at the time of the accident with the additional requirement that the property also be carried "in any business." The question is not whether the semi-tractor *itself* was used in a business for the purpose of carrying property at the time of the accident; rather, the question is whether the accident occurred while the semi-tractor is actually carrying property in any business. Notably, decades after *Griffie* was decided, *Conn Indemnity Co v Stringfellow*, 956 F Supp 553, 557 (MD Pa, 1997), considered an exclusionary clause that was practically identical to the clause at issue and expressly disagreed with *Griffie*. *Stringfellow* explained that "if the covered vehicle or vehicles are not being used to *carry property*, the exclusion does not apply and cannot be relied upon to deny coverage." *Id.* at 558 (emphasis added). *Stringfellow* also concluded that *Griffie* "significant[ly] alter[ed] . . . the actual language" of the exclusion. *Id.*[7]

In this case, it is undisputed that at the time of the accident, the semi-tractor was driven without attached property. Accordingly, in light of our conclusion that the business-use exclusion's first clause precludes coverage as long as the covered vehicle is carrying attached property in any business, we hold that the first clause does not preclude coverage in this case.

---

[7] The Court of Appeals attempted to factually distinguish *Stringfellow*; however, its reasoning stemmed from conflating whether the semi-tractor was, in fact, carrying property with whether the carrying of property was in furtherance of a business purpose. See *Hunt*, 298 Mich App at 556 n 5 (explaining that "in *Stringfellow*, the driver was not under any order to pick up or drop off property, nor was he engaged in any sort of inspection as was the driver in *Griffie*").

## 2. THE SECOND CLAUSE

Because we hold that the first clause of the business-use exclusion does not preclude coverage, it is necessary to determine whether the second clause does. After considering the record in light of the trial court's prior factual findings, we conclude that this case requires that the trial court make further findings of fact.

It is clear that Drielick Trucking and the Batesons did not enter a written lease regarding the use of Drielick Trucking's semi-tractors, contrary to federal regulations.[8] Because Drielick Trucking's and the Batesons' business relationship was in direct contravention of applicable federal regulations, our order granting leave to appeal focused primarily on the potential lease agreement and whether the Court of Appeals should have, instead, resolved this case under the policy's leasing clause.

Apparently considering that clause, the trial court previously explained that the parties had agreed that there are no material issues of fact in dispute; however, that does not appear to be the case. Bill and Jamie Bateson operated Great Lakes Logistics & Services (GLLS), in addition to the carrier company, GLC. GLLS was a brokerage company that connected semi-tractor owners, such as Roger Drielick, with carriers that

---

[8] Specifically, 49 CFR 376.11 and 49 CFR 376.12 require that if a semi-tractor owner leases its equipment to a carrier, a written lease agreement must be executed. See *Transamerican Freight Lines, Inc v Brada Miller Freight Sys, Inc*, 423 US 28, 36-37; 96 S Ct 229; 46 L Ed 2d 169 (1975) (explaining that the federal regulations mandate that the "lessee must assume the responsibility for the shipment and have full authority to control it," and, to that end, the regulations require a written lease agreement, which helps in "fixing of the lessee's responsibility") (citation omitted). However, the fact that no written lease was entered into in this case does not preclude the trial court on remand from concluding that a lease was in fact entered into. See *Wilson v Riley Whittle, Inc*, 145 Ariz 317, 321; 701 P2d 575 (Ariz App, 1984) (explaining that "the absence of a written trip lease is legally irrelevant").

are federally authorized to transport goods interstate, such as GLC. The parties dispute whether Bill Bateson dispatched Corey under GLC's authority or merely brokered the deal under GLLS's authority. Furthermore, the trial court considered the parties' "verbal agreement and course of conduct," concluding that the payment terms and the fact that Corey was not bound by a strict pick-up deadline meant that the business relationship was not triggered until Corey actually picked up for delivery the trailer of goods. Yet it remains uncertain whether the parties entered into a *leasing* agreement *as contemplated by the terms of the insurance policy*. Barring GLLS's alleged involvement, an oral arrangement or course of conduct might have existed between GLC and Drielick Trucking, but whether that agreement constituted a lease for the purposes of the policy is a threshold factual determination that has not yet been fully considered.

Accordingly, we direct the trial court on remand to consider the parties' agreement to decide whether there was, in fact, a leasing agreement between Drielick Trucking and GLC as contemplated by the business-use exclusion's leasing clause. If so, the precise terms of that agreement must be determined, and the trial court should reconsider whether Corey was acting in furtherance of a particular term of the leasing agreement at the time of the accident.

## IV. CONCLUSION

We hold that the first clause of the business-use exclusion precluding coverage "while a covered 'auto' is used to carry property in any business" is properly construed as excluding coverage with respect to a semi-tractor only when the accident occurs during the time that property is attached to the semi-tractor that is used in any business. Accordingly, we reverse the judgment of the Court of Appeals. Given that coverage is

16

not precluded under the business-use exclusion's first clause, it is necessary to determine whether coverage is nonetheless precluded under the second clause of the exclusion relating to a leased covered vehicle. In that regard, we remand this case for the trial court to make further factual determinations consistent with our analysis and consider whether the second clause precludes coverage in light of the trial court's additional findings of fact.

We do not retain jurisdiction.

Michael F. Cavanagh
Robert P. Young, Jr.
Stephen J. Markman
Mary Beth Kelly
Brian K. Zahra
Bridget M. McCormack
David F. Viviano