# STATE OF MICHIGAN

# COURT OF APPEALS

CHARLIE B. HOBSON and MARY L. HOBSON,

        Plaintiffs-Appellees,

v

INDIAN HARBOR INSURANCE COMPANY,
XL INSURANCE AMERICA, INC., and XL
INSURANCE COMPANY OF NEW YORK,
INC.,

        Defendants-Appellants,

and

WILSON INVESTMENT SERVICE &
CONSTRUCTION, INC., WILSON
INVESTMENT SERVICE, CRESCENT HOUSE
APARTMENTS, CRESCENT HOUSE
APARTMENTS, L.L.C., W-4 FAMILY LIMITED
PARTNERSHIP, W-4 FAMILY, L.L.C., and
JAMES P. WILSON,

        Defendants-Appellees.

UNPUBLISHED
March 10, 2015

No. 316714
Wayne Circuit Court
LC No. 12-008167-CK

Before: O'CONNELL, P.J., and BORRELLO and GLEICHER, JJ.

PER CURIAM.

        This appeal arises from an action filed by plaintiffs seeking to recover under their landlord's commercial general liability (CGL) insurance policy for alleged injuries that occurred following a fire in the apartment complex where plaintiffs resided. The circuit court denied a motion for summary disposition filed by defendants Indian Harbor Insurance Company, XL Insurance America, Inc., and XL Insurance Company of New York, Inc. (the insurance defendants). This Court originally denied the insurance defendants' application for leave to

-1-

appeal;[1] however, our Supreme Court remanded the case to this Court "for consideration as on leave granted." *Hobson v Indian Harbor Ins Co*, 496 Mich 851; 846 NW2d 923 (2014). For the reasons set forth in this opinion, we affirm.

## I. BACKGROUND

There is no dispute that the CGL policy at issue in this case was effective July 14, 2008, and it covered the apartment building where plaintiffs resided. The CGL policy provided that the insurer would "pay those sums that the insured becomes legally obligated to pay as damages because of 'bodily injury'" caused by an "occurrence." The policy defined "occurrence" as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions."

In addition, at the time plaintiffs suffered their alleged injuries, the CGL policy contained a "total pollution exclusion" endorsement[2] that provided as follows:

> This insurance does not apply to:
>
> f. Pollution
>
> (1) "Bodily injury" or "property damage" which would not have occurred in whole or part but for the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants" at any time.

Relative to this exclusion, the policy defined "pollutants" as: "any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed" (emphasis added).

On June 18, 2012, plaintiffs filed a complaint against the insurance defendants, as well as Wilson Investment Service and Construction, Inc., Wilson Investment Service, Crescent House Apartments, Crescent House Apartments, LLC, W-4 Limited Family Partnership, W-4 Family, LLC and James P. Wilson ("the Wilson defendants").[3] The complaint averred that the Wilson defendants owned and operated the apartment building where plaintiffs resided and alleged that

---

[1] *Hobson v Indian Harbor Ins Co*, unpublished order of the Court of Appeals, entered December 20, 2013 (Docket No. 316714).

[2] This endorsement replaced the former subsection (f), which contained a "hostile fire" exception. However, the endorsement clearly indicated that it "replaced" the former subsection (f) and it took effect before the alleged injuries occurred; therefore, the "hostile fire" exception has no bearing in this case.

[3] The complaint referenced a prior action, Wayne Circuit Court No. 11-007287-NO, that plaintiffs filed against the Wilson defendants.

on July 17, 2008, "one of [the Wilson defendants'] employees and managers set a fire due to negligence" that injured plaintiffs and caused them damages.

Plaintiffs alleged that the CGL policy "covered [the Wilson defendants'] negligence and/or negligence of its employees and/or agents" at the apartment complex. The complaint asserted that the insurance defendants "have wrongfully denied insurance coverage to [the Wilson defendants] for injuries caused to . . . Plaintiffs and . . . breached [their] duty to defend, evaluate, settle and/or indemnify [the Wilson defendants]" from liability for the injuries that the Wilson defendants' employees negligently caused plaintiffs. Plaintiffs requested that the circuit court "enter a declaratory judgment declaring the rights and other legal relations of all interested parties."

On October 16, 2012, the insurance defendants filed a motion for summary disposition pursuant to MCR 2.116(C)(8) and (10). The insurance defendants argued in part that the alleged injuries suffered by plaintiffs included "'smoke inhalation injuries,'" and coverage was therefore barred by the pollution exclusion.

Plaintiffs responded that the pollution exclusion did not bar coverage, arguing in part that the policy "clearly contemplates pollution as a substance that was confined" and then released, "something distinctively apart and different from a fire." Plaintiffs asserted that the exclusionary language did not apply to the present facts, in which the Wilson defendants' negligence caused "a fire which then generated combustion and its natural by-products."

Following a hearing, the circuit court denied the insurance defendants' motion, reasoning as follows:

> *The Court*: Why would this person buy your insurance? . . . And then he has a fire and somebody is injured and you say, oh you're not covered.
>
> *[Counsel for insurance defendants]*: What's critical here is the injury that's being alleged in the underlying complaint is about the inhalation of the smoke.
>
> *The Court*: Which happens in fires.
>
> * * *
>
> If they would have just been burned, they would have been covered[?]
>
> *[Counsel for insurance defendants]*: Yes.
>
> *The Court*: That's an absurd result in reading this policy. They couldn't have intended this when you have this total pollution exclusion endorsement which refers to pollution as being something that has to be discharged, dispersed, seeped, migrated, releases [sic] or escaped. None of which happened here; it was a fire. A fire has smoke. Your motion is denied.

On June 6, 2013, the court entered an order denying the insurance defendants' motion. After this Court denied the insurance defendants' application for leave to appeal, our Supreme Court remanded the case to this Court "for consideration as on leave granted." *Hobson*, 496 Mich at 851.

## II. ANALYSIS

The insurance defendants contend that the circuit court erred in denying the motion for summary disposition.

We review de novo a ruling on a motion for summary disposition. *Maiden v Rozwood*, 461 Mich 109, 118; 597 NW2d 817 (1999). The insurance defendants moved for summary disposition under both MCR 2.116(C)(8) and (10). "A motion under MCR 2.116(C)(8) may be granted only where the claims alleged are so clearly unenforceable as a matter of law that no factual development could possibly justify recovery." *Id*. at 119 (quotations and citations omitted). Summary disposition is proper under MCR 2.116(C)(10) "[w]here the proffered evidence fails to establish a genuine issue regarding any material fact, [and] the moving party is entitled to judgment as a matter of law." *Id*.

The proper interpretation of clear contractual language and the determination whether a contract's language qualifies as ambiguous both constitute questions of law that we review de novo. *Klapp v United Ins Group Agency, Inc*, 468 Mich 459, 463; 663 NW2d 447 (2003). Similar to other contracts, "[a]n insurance policy must be enforced in accordance with its terms." *Frankenmuth Mut Ins Co v Masters*, 460 Mich 105, 111; 595 NW2d 832 (1999). "While [i]t is the insured's burden to establish that his claim falls within the terms of the policy, [t]he insurer should bear the burden of proving an absence of coverage." *Hunt v Drielick*, 496 Mich 366, 373, 852 NW2d 562 (2014) (quotation marks and citations omitted). "Exclusionary clauses in insurance policies are strictly construed in favor of the insured." *Auto–Owners Ins Co v Churchman*, 440 Mich 560, 567; 489 NW2d 431 (1992). "However, [i]t is impossible to hold an insurance company liable for a risk it did not assume, and, thus, [c]lear and specific exclusions must be enforced." *Hunt*, 496 Mich at 373 (quotation marks and citations omitted) (alteration in original).

The resolution of this case turns on whether the pollution exclusion applied to bar coverage for plaintiffs' alleged bodily injuries. As noted above, the policy provided coverage for bodily injuries caused by an "occurrence." The policy defined "occurrence" as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." However, the policy excluded coverage for bodily injuries caused by pollution as follows:

This insurance does not apply to:

f. Pollution

(1) "Bodily injury" or "property damage" which would not have occurred in whole or part but for the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants" at any time.

Relative to this exclusion, the policy defined "pollutants" to mean: "any solid, liquid, gaseous or thermal irritant or contaminant, *including smoke*, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed" (emphasis added). Given that we are to construe this exclusion in the context of the policy as a whole, *Auto-Owners Ins Co v Churchman*, 440 Mich 560, 566; 489 NW2d 431 (1992), we proceed by reviewing the background and origination of pollution exclusion clauses in general.

The impetus behind pollution exclusion clauses similar to the one at issue in this case was so that "insurers could avoid the yawning extent of potential liability arising from the gradual or repeated discharge of hazardous substances into the environment." *Kent Farms, Inc, v Zurich Ins Co*, 140 Wn 2d 396, 400; 998 P2d 292 (2000) (internal quotations and citations omitted).[4] "Later, various forms of absolute pollution exclusion clauses . . . were incorporated into insurance policies in the wake of expanded environmental liability under [CERCLA]." *Id.*, (citations omitted). "These clauses were clearly intended to exculpate insurance companies from liability for massive environmental cleanups required by CERCLA and similar legislation." *Id.*, citing Stempel, Jeffrey W., *Reason and Pollution*: *Correctly Construing the "Absolute' Exclusion in Context and in Accord with its Purpose and Party Expectations*, 34 Tort & Ins L.J. 1, 5 (1998); see also 3 Thomas & Mootz, New Appleman on Insurance Law Library Edition (September 2013 update), § 16.02[3][b], p. 16-23 (noting that "Since the enactment of CERCLA, the Clean Water Act and similar state laws in the 1970s and 1980s, insurers have not wanted to cover the enormous expense of reversing more than 100 years of industrial pollution. As a result, the CGL policy excludes pollution and contamination claims"). The present version of the pollution exclusion was intended to "eliminate all pollution claims." *McKusick v Travelers Indemnity*, 246 Mich App 329, 334; 632 NW2d 525 (2001).

Given this backdrop and construing the exclusion in the context of the policy as a whole, it is clear that, under the plain terms of the subsection (f), plaintiffs did not allege that they sustained injuries that "would not have occurred in whole or part but for the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of" a pollutant as that term is defined in the policy. Here, plaintiffs did not allege that their injuries were caused by a pollutant. Instead, plaintiffs alleged that negligence on the part of the insured's employees gave rise to their injuries. Specifically, in their complaint in this case, plaintiffs alleged in relevant part that employees of the insured "*set a fire due to negligence . . . causing . . . Plaintiffs the injuries* and damages set forth in the complaint in [the companion case against the Wilson defendants]" (emphasis added). Indeed, the insurance defendants even acknowledge in their brief on appeal that "plaintiffs were allegedly injured *in a fire*, which occurred in the apartment complex plaintiffs were residing in. . . " (emphasis added). Thus, the alleged injuries were not caused in whole or in part by a pollutant that was discharged, dispersed, released, seeped, migrated or escaped. Rather, the injuries allegedly arose from the negligence of the insured, which resulted in a fire.

---

[4] "[W]hile not binding, caselaw from sister states and federal courts may be considered persuasive authority." *Travelers Property Cas Co of America v Peaker Services, Inc*, 306 Mich App 178, 188; 855 NW2d 523 (2014).

The insurance defendants contend that plaintiffs allegedly "suffered 'smoke inhalation injuries' among other injuries" and therefore the injuries were barred by the pollution exclusion. In making this argument, the insurance defendant attempt to separate smoke from the fire that burned at the complex where plaintiffs were physically located. In doing so, the insurance defendants extend the scope of the pollution exclusion beyond the scope of its original intent and beyond the plain meaning of the language contained in the exclusion. Indeed, it is impossible to separate smoke from fire in instances where the fire breaks out within the premises of the insured. Because the fire was located in the premises of the insured where plaintiffs resided, under the plain meaning of the terms in the exclusion, the insurance defendants cannot show how plaintiffs were injured in whole or in part by a "discharge, dispersal, seepage, migration, release or escape" of a pollutant. In the context of a pollution exclusion clause, the Sixth Circuit Court of Appeals has set forth the dictionary definitions of the terms "discharge," "disperse" "release" or "escape" as follows:

> A 'discharge' is defined as 'a flowing or issuing out.' To 'disperse' is defined as 'to cause to breakup and go in different ways'; 'to cause to become spread widely.' A 'release' is defined as 'the act of liberating or freeing: discharge from restraint.' An 'escape' is defined as an 'evasion of or deliverance from what confines, limits, or holds.' [*Lumbermens Mut Cas Co v S-W Industries, Inc*, 39 F 3d 1324, 1336 (CA 6, 1994), quoting *Webster's Third New International Dictionary* 644, 653, 1917, 774 (1986).]

"Seepage" is defined as "the act or process of seeping" and "seeping" is defined as "to pass, flow, or ooze gradually, as through a porous substance." *Random House Webster's College Dictionary*, 1997. "Migration" is defined in relevant part as "the process or act of migrating" and "migrating" is defined in relevant part as "to spread, as by seepage, from an area or site of containment into a larger environment." *Id*.

In this case, it is clear that plaintiffs' did not allege that they suffered injuries caused in whole or in part by the seepage or migration of a pollutant—i.e. smoke. Here, plaintiffs were injured when a fire started at the complex where they were located. They were physically on the premises when the fire started. Their injuries were not allegedly caused by smoke that passed, flowed, or oozed gradually into the apartment complex. Instead, the smoke was there with the fire when the fire started. Nor were plaintiffs' injuries alleged to have been caused by smoke that migrated into the apartment complex. Nothing suggested that smoke spread by seepage from an area or site of containment into a larger environment. The fire was never alleged to have been contained somewhere outside the apartment complex before the fire and its smoke spread or seeped into the building where plaintiffs were injured. Rather, the smoke was attached to the fire that started *inside* the building where plaintiffs were physically located. There was no migration. There was no seepage.

Similarly, plaintiffs' did not allege that their injuries were caused by the discharge, dispersal, release, or escape of a pollutant. It was not alleged that the insured negligently allowed smoke to flow or issue out of an area into the area where plaintiffs were located. Thus there was no discharge. Similarly, plaintiffs did not allege that the insured caused smoke to "breakup" and "go in a different way" or spread widely in a manner that injured plaintiffs. Thus, a pollutant was not dispersed. Plaintiffs did not allege that the insured liberated, freed, or

-6-

discharged smoke from a restraint resulting in injury. Thus, there was no release of a pollutant. Finally, plaintiffs did not allege that the insured allowed smoke to evade or be delivered from what confined, limited, or held the smoke. Thus, there was no escape of a pollutant. Rather, plaintiffs alleged that the insured's negligence caused a fire at the complex where plaintiffs were located, causing bodily injury. There was no, discharge, dispersal, release or escape of a pollutant in this case.

In sum, defendants would have this Court hold that any "pollutant" involved in the casual chain negates their liability. To so hold would ignore the context in which the pollution exclusion was written and to extend it far beyond its plain meaning. Rather, the pollution exclusion applies to "occurrences" involving the pollutant as a pollutant. See, *Kent Farms*, 140 Wn2d at 402. As stated by the Supreme Court of Washington, "Our approach is consonant with the understanding of the average purchaser of insurance and consistent with the provisions of the insurance policy as a whole: that is the pollution exclusion clause was designed to exclude coverage for traditional environmental harms. We will not extend the scope of the exclusion clause beyond its intended purpose." *Kent Farms*, 140 Ws2d at 402.[5]

In this case, plaintiffs' allegedly suffered injuries because of the negligence on the part of the insured that resulted in a fire. Plaintiffs did not allege injuries that were caused in whole or in part by the discharge, dispersal, release, seepage, migration or escape of a pollutant. Defendant's contention that the pollutant was the basis for plaintiff's claim is inaccurate. Plaintiffs were allegedly injured by when the fire and smoke engulfed them. It did not pollute them. Accordingly, the trial court did not err in denying the insurance defendant's motion for summary disposition.

Affirmed. Plaintiffs having prevailed, may tax costs. MCR 7.219(A). Jurisdiction is not retained.

/s/ Stephen L. Borrello
/s/ Elizabeth L. Gleicher

---

[5] We note that other jurisdictions have adopted the same analytical approach utilized by the Washington Supreme Court. *Cf. Gamble Farm Inn, Inc. v Selective Ins. Co.,* 440 Pa Super 501, 508; 656 A2d 142 (1995); *Continental Cas. Co v Rapid-American Corp. 60 NY2d 640, 653; 609 NE2d 506 (1993).* In *Allstate Ins. Co. v Barron*, 269 Conn 394; 848 A2d 1165, 1180-1181 (2004), the Supreme Court of Connecticut, reviewing a similar policy exclusion, held that smoke from a house fire is not covered by the pollution exclusion. The Connecticut Supreme Court went on to state: "The plaintiff has not provided, and our research has not revealed any authority for the proposition that smoke from a house fire is covered by the pollution clause."