MEYERS v ROBB

KALCZYNSKI v ROBB

Docket Nos. 30601-04, 77-1715-18. Submitted February 7, 1978, at Lansing.—Decided April 17, 1978. Leave to appeal applied for.

Shirley Meyers brought actions as the guardian of Brian Kalczynski, Darwin Kalczynski and Steven Kalczynski against George Robb and his wife, and against Donald Garlock, Lester Johnson, and Genesee Merchants Bank and Trust Company seeking damages for injuries sustained by the minors when a 55-gallon fuel drum exploded. Marilyn Kalczynski brought separate actions as next friend of Michael David Roy against the same defendants for damages for injuries sustained in the same explosion. The drum at issue was sold by defendant Garlock at an auction at which defendant Johnson was hired to serve as auctioneer and the defendant bank was hired to serve as clerk and cashier. The drum was purchased by defendant George Robb who removed it to his farm. The explosion occurred 2 years after the sale while the minor plaintiffs were playing with a cigarette lighter near the drum. Summary judgment of no liability was granted to defendants Johnson and Genesee Bank by the Livingston County Circuit Court, Paul R. Mahinske, J. Plaintiffs appeal contending that defendants Johnson and Genesee Bank were negligent in failing to inspect the drum prior to the sale; that the duty of care owed by an auctioneer to those purchasing at an auction was an issue for a jury to decide; and that the defendants were jointly liable for the damages under a theory of joint venture. *Held:*

1. Summary judgment in negligence cases is proper where the court properly can say from the undisputed facts that there is no negligence issue for the jury.

2. The risk to the public created by an auctioneer's failure to

REFERENCES FOR POINTS IN HEADNOTES

[1] 57 Am Jur 2d, Negligence §§ 66, 376.

[2] 57 Am Jur 2d, Negligence §§ 66 *et seq.,* 261 *et seq.*

[3] 57 Am Jur 2d, Negligence §§ 274, 287.

[4, 5] 57 Am Jur 2d, Negligence §§ 120, 122.
  63 Am Jur 2d, Products Liability §§ 27, 117, 122.

[6, 7] 46 Am Jur 2d, Joint Venture § 7 *et seq.*

inspect items to be sold at a farm auction is a reasonable risk for which an action in negligence may not be brought.

3. A joint venture does not exist where there is no agreement to undertake the venture jointly, no provision for mutual sharing of profits or losses and no right on the part of one party to exercise control over the subject matter of the venture.

Affirmed.

1. Judgment—Negligence—Summary Judgment—Undisputed Facts—Issues—Jury.

Summary judgment will almost always be inappropriate in negligence cases unless on the undisputed physical facts a judge could say that a directed verdict would be required because of the absence of a negligence issue for the jury.

2. Negligence—Duty—Standard of Conduct.

Duty in a negligence action may be defined as an obligation to conform to a particular standard of conduct toward another to which the law will give effect and recognition; essential to the determination of a duty is consideration of the reasonableness of the risk created by the defendant's conduct, and in that sense it is a policy question indistinguishable from proximate cause.

3. Negligence—Risk of Harm—Reasonableness—Jury—Utility of Conduct.

The reasonableness of the risk of harm in a negligence action whether analyzed in terms of duty, proximate cause or specific standard of care turns on how the utility of the defendant's conduct is viewed in relation to the magnitude of the risk thereby created; in any case where there might be a reasonable difference of opinion regarding how that balance should be resolved, the question is for the jury, subject to instructions as to the legal conclusion to be drawn from its determination; however, a court may decide that the utility of the defendant's conduct so overrides the degree of risk thereby created that the jury will not be permitted to impose liability upon the defendant for the resultant harm.

4. Negligence—Auction Sales—Duty to Inspect—Reasonable Risks.

The risk to the public created by an auctioneer's failure to inspect the items to be sold at a farm auction is a reasonable risk for which an action in negligence may not be maintained.

5. NEGLIGENCE—VENDOR AND PURCHASER—AUCTION SALES—CLERKS
AND CASHIERS—DUTY TO INSPECT.

> The relationship of a bank, acting as no more than clerk and
> cashier at a farm auction, to the purchasers at the auction is
> insufficient to give rise to a duty on the bank's part to inspect
> the sale items for the benefit of the purchasers.

6. JOINT ADVENTURES—EVIDENCE—AGREEMENTS—PROFIT SHARING—
RIGHT OF CONTROL.

> A seller of farm goods at an auction who hires a bank to act as
> clerk and cashier for the sale is not a joint venturer with the
> bank where there is no evidence of an agreement to undertake
> a joint venture, there is no provision for the mutual sharing of
> profits and losses, and there is no evidence that the bank has a
> right to exercise any control over the subject matter of the
> auction.

7. JOINT ADVENTURES—ELEMENTS.

> The elements of a joint venture are: (a) an agreement indicating
> an intention to undertake a joint venture; (b) a joint undertak-
> ing of; (c) a single project for profit; (d) a sharing of profits as
> well as losses; (e) contribution of skills or property by the
> parties; (f) community interest and control over the subject
> matter of the enterprise.

*Church, Wyble, Kritselis & Tesseris* (by *Thomas H. Hay),* for plaintiffs.

*Denfield, Timmer & Taylor,* for defendant Lester Johnson.

*Hooper, Hathaway, Fichera, Price & Davis,* for defendant Genesee Merchants Bank & Trust.

Before: N. J. KAUFMAN, P. J., and D. E. HOL-BROOK, JR. and D. F. WALSH, JJ.

D. F. WALSH, J. This is a consolidated appeal from summary judgments entered in favor of defendants Lester Johnson and Genesee Merchants Bank & Trust [hereinafter Bank]. GCR 1963, 117.2(3).

Plaintiffs brought separate causes of action on

behalf of four minors injured by the explosion of a 55-gallon fuel drum. Liability was predicated on negligence and breach of warranty. The pertinent facts follow.

Defendant Garlock contracted with defendant Johnson to have the latter serve as auctioneer at a sale of Garlock's farm tools, machinery, hardware and furniture, for which Johnson would receive 7-1/2 percent of the sales price.

In turn Johnson hired defendant Bank to provide clerking and cashiering services at the auction for which Johnson paid, out of his share, 2 percent of the sales price. The Bank had no contract with Garlock and exercised no control over the auctioneer, the goods being sold or the prices asked.

On the day of the auction (and through prior advertisement) Johnson disclosed that Garlock was the owner of the goods to be auctioned. No representations regarding the quality or fitness of the drums in question were made by Johnson or by the Bank.

Defendant Robb purchased the drums at the auction and took them to his farm. More than 2 years later the four minors were playing with a cigarette lighter near one of the drums when it exploded, injuring them.

Plaintiffs' challenge to the summary judgment granted to defendants Johnson and Bank requires us to answer the following questions:

(1) Was there a genuine issue as to a material fact concerning defendant Johnson's liability?

(2) Did defendant Johnson, the auctioneer, have a duty to inspect the drums and to warn defendant Robb of their dangerous propensities?

(3) Did defendant Bank have a duty to inspect

the drums and to warn defendant Robb of their dangerous propensities?

(4) Was the Bank engaged in a joint venture with Johnson and Garlock so as to render it jointly and severally liable for their actions?

The first question concerns the existence of material factual issues. The affidavits and depositions offered in support of defendant Johnson's motion for summary judgment established that he was hired as an auctioneer, that he did not inspect the drums and that he made no representations as to their quality or fitness. In their argument plaintiffs relied on those same documents and offered no other proofs.

The trial court was correct in finding the above facts undisputed. Whether summary judgment was proper turns on the resolution of the next issue.

"In negligence cases, even though there may be no dispute as to the quantitative or physical facts, summary judgment will almost always be inappropriate * * * unless on the undisputed physical facts a judge would say that a directed verdict would be required [because of the absence of a] negligence issue for the jury." *Durant v Stahlin,* 375 Mich 628, 653; 135 NW2d 392 (1965) (Opinion of SOURIS, J.).

In negligence cases a duty may be defined as an obligation to which the law will give effect and recognition to conform to a particular standard of conduct toward another. *Farwell v Keaton,* 396 Mich 281; 240 NW2d 217 (1976).[1] Essential to the

---

[1] In a strict analytical sense duty is no more than the judicial recognition of a relationship between two parties upon which liability for negligence may be premised. It does not include the nature of the obligation (the general standard of care and the specific standard of care), but only its existence. *Moning v Alfono,* 400 Mich 425; 254 NW2d 759 (1977). However, as the text of this opinion shall illustrate, consideration of the defendant's conduct is necessary, as a practical matter, to deciding whether to impose a duty upon him.

determination of the existence of a duty is consideration of the reasonableness of the risk created by the defendant's conduct. In that sense, duty is a policy question indistinguishable from the question of proximate cause. *Moning v Alfono,* 400 Mich 425; 254 NW2d 759 (1977), see, Prosser, Torts (4th ed), § 37, pp 206–207.

The reasonableness of the risk of harm whether analyzed in terms of duty, proximate cause or specific standard of care turns on how the utility of the defendant's conduct is viewed in relation to the magnitude of the risk thereby created. *Moning v Alfono, supra.* In any case where there might be a reasonable difference of opinion regarding how that balance should be resolved, the question is for the jury, subject to instructions as to the legal conclusion to be drawn from its determination. *Moning v Alfono, supra, Bonin v Gralewicz,* 378 Mich 521; 146 NW2d 647 (1966).

However, a court may decide that the utility of the defendant's conduct so overrides the degree of risk thereby created that juries will not be permitted to impose liability upon the defendant for the resultant harm. *Moning v Alfono, supra, cf. Holloway v Martin Oil Service, Inc,* 79 Mich App 475; 262 NW2d 858 (1977).

In the instant case plaintiffs ask us to recognize an auctioneer's obligation to inspect all goods sold at a farm auction. We must determine whether, given the social utility of such auctions, the magnitude of risk of the auctioneer not inspecting the items for sale justifies the burden imposed by such an obligation.[2]

Farm auctions serve both public and private

---

[2] For a detailed statement of specific factors to be considered in this type of analysis *see Moning v Alfono, supra;* 2 Restatement Torts, 2d, §§ 292–293.

interests. To the seller they provide an efficient and inexpensive means of liquidating personal property; for a modest fee he may avail himself of the experience and expertise of the auctioneer in arranging and executing the sale of such property. The public benefits from the existence of a marketplace where a panoply of items can be purchased at low prices, thus facilitating the exchange of goods to the benefit of all concerned. The social value of such an arrangement is self-evident.

In determining the magnitude of risk we must assess the number of people likely to be injured due to discoverable dangerous conditions present in items purchased at farm auctions.[3] In this regard we note that the vast majority of such items are not inherently dangerous. Also pertinent is the general recognition that farm auctioneers have no special expertise concerning the goods being sold[4]; their skill is in organizing and executing the auction itself. Consequently, rather than rely upon the auctioneer to assess the quality and fitness of the sale goods prospective purchasers themselves almost invariably inspect and make their own assessment. Furthermore, the awareness that used goods are being auctioned is likely to increase the buyer's vigilance regarding the quality and fitness of the product.

Given the relatively small number of auctioned items containing discoverable dangerous conditions and the near certainty that the purchaser will

---

[3] More precisely the question is how many of those injuries are attributable to the auctioneer's failure to inspect. However, given the nature of the factors considered in the text, that additional analytical step is of little significance to our risk assessment.

[4] This distinguishes farm auctions from those involving more specialized goods, e.g., art auctions, in which a buyer may sometimes rely upon the auctioneer's assessment of the quality and value of the product in deciding whether to purchase it.

inspect the goods before using them[5], we find an extremely low probability that an auctioneer's failure to inspect sale items at a farm auction will result in bodily injury. Thus, the magnitude of risk is minimal.

On the other hand, the burden that would be imposed upon farm auctions by requiring inspection would be considerable. An auctioneer would have to become qualified to detect potentially dangerous conditions in a wide variety of goods or risk considerable liability each time he sold an item. Those who did not go out of business would certainly raise their rates to reflect the added expense and risk. Given the increasingly large awards in personal injury cases and the comparatively small amount of money realized by auctioneers for their labors we find that the detrimental impact upon farm auctions would be substantial.

In light of the foregoing considerations we conclude that all reasonable persons would agree that the risk created by an auctioneer's failure to inspect the items to be sold at a farm auction is a reasonable risk. Therefore, defendant's liability may not be predicated upon his failure to inspect the drums in question.[6] The summary judgment in

---

[5] We do not consider such inspection as an intervening independent event that would exculpate an otherwise liable auctioneer. Rather, we attach importance to the likelihood of these inspections because they significantly reduce the probability that dangerous conditions undiscovered by the auctioneer will actually result in bodily injury.

[6] The complaint alleged that the defendant "knew or should have known" of the dangerous condition of the drums. The absence of an obligation to inspect disposes of the allegation that defendant Johnson "should have known" of the danger.

Although the question of Johnson's liability premised on his actual knowledge of the danger raises an issue distinct from his duty to inspect, it does not alter our decision in this case. According to the affidavit and depositions in the record, Johnson's knowledge was limited to the fact that the drums were fuel drums, and he so advised the purchasers. His sworn deposition avers that he never inspected the drums, and plaintiffs could point to no contrary evidence indicating that he had any knowledge of the presence of fuel in the drums.

favor of defendant Johnson is therefore affirmed. *Moning v Alfono, supra;* Prosser, Torts (4th ed), § 45, p 290.

In their argument on the third question plaintiffs ask that we impose upon the Bank the duty discussed in the immediately preceding pages. Having rejected that argument for the auctioneer, we see even less reason to impose that duty on the Bank, whose participation in the sale of the goods was limited to collecting the purchase money. We think it clear that the relationship of the Bank, acting as no more than clerk and cashier, to the purchasers at the auction was insufficient to require the Bank to inspect the sale items. *Moning v Alfono, supra.*

In their final argument plaintiffs attempt to attach liability to the Bank on the theory that it was a joint venturer in the auction with Garlock and Johnson. Their contention is devoid of merit.

The elements of a joint venture are:

(a) an agreement indicating an intention to undertake a joint venture;

(b) a joint undertaking of

(c) a single project for profit;

(d) a sharing of profits as well as losses;

(e) contribution of skills or property by the parties;

(f) community interest and control over the subject matter of the enterprise. *Goodwin v S A Healy Co,* 383 Mich 300; 174 NW2d 755 (1970), *Hathaway v Porter Royalty Pool, Inc,* 296 Mich 90; 295 NW 571 (1941).

---

By hypothesis, liability premised on actual knowledge requires proof of that element. The total absence of any such proof in this case would have justified a directed verdict for the defendant. Summary judgment was, therefore, proper. *Durant v Stahlin,* 375 Mich 628; 135 NW2d 392 (1965) (opinion of SOURIS, J.).

In the instant case there was no evidence of an agreement between Garlock and the Bank, there was no provision for the mutual sharing of profits and losses and there was no evidence that the Bank exercised any control over the subject matter of the auction.

The summary judgment in favor of the Bank is affirmed.

Affirmed. Costs to appellees.