*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

ESTATE OF SANAN ALTAYE, by ALI ALTAYE, Personal Representative,

      Plaintiff-Appellant,

v

S A & R TRUCKING COMPANY, INC., AMERI-CO LOGISTICS, INC., DORA PENSAMIENTO, CARLOS MARROQUIN, doing business as BROTHER'S TIRES & BRAKES MOBILE SERVICE and BROTHER'S TRUCK AND TRAILER REPAIR, CONTINENTAL DIVIDE INSURANCE COMPANY, and MICHIGAN ASSIGNED CLAIMS PLAN,

      Defendants,

and

A & R EXPRESS TRUCKING COMPANY, INC., doing business as A & R TRUCKING, LLC,

      Defendant/Cross-Plaintiff-Appellee/Cross-Appellant,

and

CANAL INSURANCE COMPANY,

      Defendant/Cross-Defendant/Cross-Appellee.

UNPUBLISHED
August 20, 2020

No. 346797
Wayne Circuit Court
LC No. 16-006878-NI

Before: GLEICHER, P.J., and STEPHENS and CAMERON, JJ.

-1-

PER CURIAM.

Plaintiff, the Estate of Sanan Altaye, appeals as of right, and defendant, A & R Express Trucking Company, Inc., cross-appeals as of right the trial court's stipulated order dismissing all remaining claims and parties. On appeal, plaintiff challenges the trial court's opinion and order granting A & R Express's motion for summary disposition of plaintiff's negligence claims under MCR 2.116(C)(10). On cross-appeal, A & R Express challenges the same opinion and order of the trial court, in which the trial court also denied A & R Express's motion for summary disposition regarding its claims for liability and collision coverage against defendant, Canal Insurance Company, and granted summary disposition in favor of Canal on those same claims. We affirm.

## I. BACKGROUND

Sanan Altaye died when the semitruck and trailer he was operating overturned while decending a mountainous Wyoming highway on the evening of December 19, 2015.

Ali Adnan was the sole owner of A & R Express, which was incorporated in Michigan and was the registered owner of the 2006 Freightliner involved in this fatal accident. Yasir Hasan was the sole owner of S A & R Trucking, which had exclusive control of the 2006 Freightliner under an agreement between the two companies. In 2015, Altaye, who had a commercial driver's license ("CDL"), began driving the 2006 Freightliner for S A & R Trucking. A 2009 trailer owned by S A & R Trucking was paired with the 2006 Freightliner.

Under the terms of the agreement between S A & R Trucking and A & R Express, S A & R Trucking obtained trucking jobs for Altaye to perform, dispatched him to complete those jobs, and collected the fees for completion of those jobs. S A & R Trucking took 7% off the top of the fees and used the remaining funds to pay Altaye's wages and any costs he incurred, including permits and repairs. Any amount leftover was then remitted to A & R Express.

Initially, S A & R Trucking listed the 2006 Freightliner on S A & R Trucking's commercial trucking insurance policy, and would recoup the money for that coverage out of A & R Express's portion of the fees. Eventually, though, Adnan decided that it would be less expensive for A & R Express to obtain its own insurance policy on the 2006 Freightliner. Adnan contacted the Bye Insurance Agency[1] in North Carolina, where Adnan lived at the time, and requested a policy with "bobtail/physical damage" coverage. Using the information provide by Adnan, an application for insurance was prepared, which indicated that Adnan was seeking a "non-trucking" policy with collision coverage. However, the application named a different semitruck that was owned by Adnan and was in Adnan's personal name. Thus, when Canal issued the insurance policy, it did not cover the 2006 Freightliner. Adnan later contacted Bye Insurance and asked that the policy be changed to show that A & R Express was the named insured and that the policy covered the 2006 Freightliner. Adnan also requested that Altaye be listed as the driver. When Canal received the request, it issued an updated policy. That policy specifically noted that it no longer provided for collision coverage. The policy contained a "non-trucking use endorsement," which explicitly

---

[1] Bye Insurance is an independent insurance agency that sells policies to customers on behalf of several insurance companies, including Canal.

stated that the policy did not provide liability coverage for when the 2006 Freightliner was operating in the course of business.

On December 19, 2015, S A & R Trucking dispatched Altaye to pick up a shipment of Bentomats in Wyoming. After picking up that load, Altaye lost braking power on the 2006 Freightliner and 2009 trailer while he was driving down a mountainous stretch of Wyoming highway. The truck and trailer careened around a corner and overturned. Altaye was crushed inside of the vehicle for about 2-1/2 hours before he was extracted and taken to the hospital. Altaye later died from his injuries.

Plaintiff filed the instant litigation seeking, in pertinent part, negligence damages from A & R Express and S A & R Trucking, arguing that those companies failed to comply with relevant sections of the Federal Motor Carrier Safety Regulations ("FMCSR"), 49 CFR 300 *et seq*., as adopted in Michigan under the Motor Carrier Safety Act of 1963 ("MCSA"), MCL 480.11 *et seq*. Plaintiff also alleged that A & R Express and S A & R Trucking failed to comply with portions of Michigan's owner's liability statute. Plaintiff further alleged that A & R Express and S A & R Trucking were engaged in a joint venture. Canal, who had been named in the lawsuit in relation to a now-irrelevant claim for insurance coverage by plaintiff, filed a cross-claim against A & R Express, seeking rescission of the insurance policy or a declaration that it was not required to provide liability or collision coverage. A & R Express filed a cross-claim against Canal, seeking a declaration that it was entitled to liability and collision coverage benefits under the insurance policy. To the extent that the policy did not provide such coverage, A & R Express sought reformation of the contract.

The trial court decided a number of motions regarding liability, federal regulations, Michigan statutes, insurance coverage, and reformation. The litigation culminated in the trial court granting summary disposition in favor of Canal regarding payment of liability and collision coverage benefits. The trial court determined that Canal was not required to pay A & R Express's requested damages because the "non-trucking use endorsement" and lack of collision coverage in Canal's policy was not void as against public policy. The trial court also granted summary disposition in favor of A & R Express as to plaintiff's negligence claims, holding that A & R Express did not have a duty to maintain, inspect, and repair the 2006 Freightliner when it had no control over the vehicle. The trial court also determined that A & R Express and S A & R Trucking were not engaged in a joint venture. These appeals followed.

## II. PLAINTIFF'S NEGLIGENCE CLAIMS

Plaintiff argues the trial court improperly granted summary disposition in favor of A & R Express where questions of fact remained regarding A & R Express's liability. We disagree.

## A. STANDARDS OF REVIEW

"This Court reviews de novo whether a trial court properly granted a motion for summary disposition." *Barnard Mfg Co, Inc v Gates Performance Engineering, Inc*, 285 Mich App 362, 369; 775 NW2d 618 (2009). In reviewing a grant or denial of summary disposition under MCR 2.116(C)(10), this Court considers "the pleadings, admissions, and other evidence submitted by the parties in the light most favorable to the nonmoving party. Summary disposition is appropriate

if there is no genuine issue regarding any material fact and the moving party is entitled to judgment as a matter of law."[2] *Sallie v Fifth Third Bank*, 297 Mich App 115, 117-118; 824 NW2d 238 (2012) (quotation marks and citations omitted). "A genuine issue of material fact exists when reasonable minds could differ on an issue after viewing the record in the light most favorable to the nonmoving party." *Auto-Owners Ins Co v Campbell-Durocher Group Painting & Gen Contracting, LLC*, 322 Mich App 218, 224; 911 NW2d 493 (2017) (quotation marks and citation omitted).

"Generally, whether a duty exists is a question of law for the court and subject to de novo review." *Finazzo v Fire Equip Co*, 323 Mich App 620, 625; 918 NW2d 200 (2018). Issues involving federal statutes and regulations, such as in this case, present questions of law that are reviewed de novo. *State Treasurer v Abbott*, 468 Mich 143, 148; 660 NW2d 714 (2003).

## B. DUTY

Plaintiff asserts the trial court erred when it held that there was no question of fact that A & R Express did not have a duty to inspect, maintain, and repair the 2006 Freightliner and 2009 trailer. We disagree.

## 1. GENERAL LAW

"To establish a prima facie case of negligence, a plaintiff must prove the following elements: (1) the defendant owed the plaintiff a legal duty, (2) the defendant breached the legal duty, (3) the plaintiff suffered damages, and (4) the defendant's breach was a proximate cause of the plaintiff's damages." *Chelik v Capitol Transport, LLC*, 313 Mich App 83, 89; 880 NW2d 350 (2015) (citation omitted). "The threshold question in a negligence action is whether the defendant owed a duty to the plaintiff. 'It is axiomatic that there can be no tort liability unless defendants

---

[2] In this appeal, plaintiff contends that the trial court violated the rule requiring it to consider all of the evidence "in the light most favorable to the nonmoving party." *Sallie*, 297 Mich App at 117-118. Specifically, plaintiff argues that the trial court improperly determined that there was a lease of the 2006 Freightliner that provided for its exclusive use by S A & R Trucking. Plaintiff insists that there was a question of fact about the existence of a lease because of issues with the written lease agreement produced by S A & R Trucking. In particular, plaintiff cites Adnan's testimony that he did not sign the written lease on behalf of A & R Express and the fact that it listed the wrong entity name for the business—A & R Express, Inc., instead of the company's actual name, A & R Express Trucking Company, Inc. Plaintiff's argument in this regard results from a misunderstanding or misconstruction of the trial court's decision. Indeed, the trial court specifically held that there was a question of fact regarding whether a *written* lease agreement existed between the two companies. However, the court found that it was not material because there was a lease agreement. A review of the record does not reveal any evidence to contradict that A & R Express allowed S A & R Trucking to have sole and exclusive use of the 2006 Freightliner from, at the latest, the time that Altaye started driving the truck in 2015, until the subject accident. Therefore, plaintiff's argument that the trial court weighed credibility when it held that there was no factual dispute regarding whether a lease existed simply is not supported by the record.

owed a duty to plaintiff.' " *Fultz v Union-Commerce Assoc*, 470 Mich 460, 463; 683 NW2d 587 (2004), quoting *Beaty v Hertzberg & Golden, PC*, 456 Mich 247, 262; 571 NW2d 716 (1997). "This analysis requires a determination whether the relationship of the parties is the sort that a legal obligation should be imposed on one for the benefit of another." *Graves v Warner Bros*, 253 Mich App 486, 492; 656 NW2d 195 (2002). "In determining whether to impose a duty, this Court evaluates factors such as: the relationship of the parties, the foreseeability of the harm, the burden on the defendant, and the nature of the risk presented." *Murdock v Higgins*, 454 Mich 46, 53; 559 NW2d 639 (1997). "Only after finding that a duty exists may the factfinder determine whether, in light of the particular facts of the case, there was a breach of the duty." *Id*.

## 2. APPLICABLE LAW AND ANALYSIS

We begin by noting that the parties have made every attempt to confuse and obscure the actual issues involved in this case. Plaintiff's brief on appeal appears to argue that because A & R Express should be considered an "owner" under Michigan's owner's liability statute, A & R Express should be liable for any and all negligence related to the vehicle. Yet plaintiff ignores the language of the statutes and regulations on which plaintiff actually relies. Worse, plaintiff's brief on appeal is at least half-reliant on an outright misstatement of the record. Specifically, plaintiff repeatedly asserts that A & R Express was the registered owner of the 2009 trailer. We have reviewed the entire record, including the specific record cites provided by plaintiff, and that allegation is simply untrue. Instead, the record is clear that S A & R Trucking was the registered owner of the 2009 trailer. Given the number of legal and factual errors throughout the briefs on appeal, we have taken the initiative to address the *actual* issues and apply the *actual* facts with little help from the parties. Having done so, the ultimate result required in this appeal is clear—affirming the decision of the trial court.

Plaintiff argues there was a question of fact regarding whether A & R Express had a duty to protect Altaye from the injuries that he suffered. In support of this argument, plaintiff contends that A & R Express's duties are established by the MCSA, which adopted certain portions of the FMCSR, and by the owner's liability statute. "The use of a statutory violation to establish negligence is a matter of judicial discretion." *Klanseck v Anderson Sales & Serv, Inc*, 426 Mich 78, 87; 393 NW2d 356 (1986). This Court has held that "a regulation violation, standing alone" does not "serve as a basis for imposing a legal duty under a theory of negligence . . . ." *Sabbagh v Hamilton Psychological Servs, PLC*, 329 Mich App 324, 350-351; 941 NW2d 685 (2019). Nevertheless, the parties essentially agree that the FMCSR, as adopted by the MCSA, creates the standard of care with respect to trucking operations. They disagree, however, regarding whether those standards apply to A & R Express under the undisputed facts of this case.

Instead of analyzing the terms involved in the FMCSR, plaintiff focuses on the definition of an "owner" under Michigan law, and then simply concludes that being an owner subjects A & R Express to liability for any and all violations of sections of the FMCSR, and relevant Michigan statutes. This issue requires us to engage in statutory interpretation.

"The primary goal of judicial interpretation of statutes is to ascertain and give effect to the intent of the Legislature." *Parks v Niemiec*, 325 Mich App 717, 719; 926 NW2d 297 (2018) (quotation marks and citation omitted). "To do so, we begin by examining the most reliable evidence of that intent, the language of the statute itself." *Vermilya v Delta College Bd of Trustees*,

325 Mich App 416, 418; 925 NW2d 897 (2018) (quotation marks and citation omitted). "We must examine the statute as a whole, reading individual words and phrases in the context of the entire legislative scheme." *Ally Fin Inc v State Treasurer*, 502 Mich 484, 493; 918 NW2d 662 (2018) (quotation marks and citation omitted). "In doing so, we consider the entire text, in view of its structure and of the physical and logical relation of its many parts." *Id.* (quotation marks and citation omitted). Stated differently, this Court must "interpret[] the statutory provisions in harmony with the entire statutory scheme." *Deruiter v Byron Twp*, 325 Mich App 275, 283; 926 NW2d 268 (2018).

First, plaintiff is correct that A & R Express is considered an owner of the 2006 Freightliner under MCL 257.37(b),[3] which provides that " '[o]wner' means . . . a person who holds the legal title of a vehicle." Nonetheless, A & R Express's status as an owner[4] does not require reversal of

---

[3] Plaintiff is not correct, however, that A & R Express would be considered an owner of the 2009 trailer under the cited statute. This is because the statute in question deals with "motor vehicles." MCL 257.37. That same statutory scheme defines a "motor vehicle" as "every vehicle that is self-propelled . . . ." MCL 257.33. It is undisputed that the 2009 trailer was not "self-propelled." Instead, the 2009 trailer was pulled by the 2006 Freightliner. Thus, because the statute in question was not applicable, and A & R Express was not the titled owner of the trailer and did not have the exclusive use of it, plaintiff has not provided any grounds for us to consider A & R Express an owner of the 2009 trailer. Consequently, to the extent plaintiff's argument relies on that allegation, it is without merit.

Having failed to provide a convincing argument that A & R Express was an owner of the 2009 trailer, plaintiff alternatively argues that A & R Express is still subject to certain sections of the FMCSR as an "intermodal equipment provider." However, plaintiff raises this argument for the first time in its reply brief on appeal. Thus, in addition to being unpreserved for review because it was not raised before the trial court, *City of Fraser v Almeda Univ*, 314 Mich App 79, 103-104; 886 NW2d 730 (2016), the issue is also not properly before this Court because plaintiff is not permitted to raise a new issue in its reply brief, *Blazer Foods, Inc v Restaurant Props, Inc*, 259 Mich App 241, 252; 673 NW2d 805 (2003) ("[R]aising an issue for the first time in a reply brief is not sufficient to present the issue for appeal."). Even so, the issue is without merit. The FMCSR defines "intermodal equipment" as "trailing equipment that is used in the intermodal transportation of containers over public highways in interstate commerce, including trailers and chassis." 49 CFR 390.5. An "intermodal equipment provider" is "any person that interchanges intermodal equipment with a motor carrier pursuant to a written interchange agreement or has a contractual responsibility for the maintenance of the intermodal equipment." 49 CFR 390.5. The record contains no evidence of a "written interchange agreement," or that A & R Express had "a contractual responsibility for the maintenance of the" 2009 trailer. Instead, the evidence provided to the trial court showed that S A & R Trucking had the exclusive use of the 2009 trailer and was the registered owner. Thus, plaintiff's argument that A & R Express should be considered an intermodal equipment provider is not only unpreserved and untimely, but also lacks merit.

[4] A & R Express's argument that it is excluded from being considered an owner of the 2006 Freightliner under MCL 257.401a is unavailing. MCL 257.401a provides that " 'owner' does not include a person engaged in the business of leasing motor vehicles who is the lessor of a motor

-6-

the trial court's order. In addressing plaintiff's arguments with respect to the FMCSR, it is important to note that the Michigan Legislature adopted relevant portions of the FMCSR as the law of this state:

> (1) This state adopts the following provisions of title 49 of the code of federal regulations on file with the office of the secretary of state, except where modified by this act:
>
> * * *
>
> (b) Motor carrier safety regulations under 49 CFR parts 40, 356, 365, 368, 371 through 373, 375, 376, 379, 382, 383, 385, 387, 390 through 393, 395 through 399 including the appendices of each part . . . . [MCL 480.11a(1)(b).]

As relevant to this case, 49 CFR 390.3(a)(1) provides for the applicability of the FMCSR, noting that they "are applicable to all employers, employees, and commercial motor vehicles that transport property or passengers in interstate commerce." Because an "owner" is not included in the list of entities to which the FMCSR apply, the premise of plaintiff's argument is flawed. Furthermore, although not analyzed by either party, A & R Express does not fit the applicable definition of an employer. "Employer means any person engaged in a business affecting interstate commerce who owns or leases a commercial motor vehicle in connection with that business, or assigns employees to operate it . . . ." 49 CFR 390.5. Notably, under the FMCSR, an "employee" includes "a driver of a commercial motor vehicle (including an independent contractor while in the course of operating a commercial motor vehicle) . . . ." 49 CFR 390.5.

It is undisputed that A & R Express was the registered owner of the 2006 Freightliner. Thus, for the purposes of the foregoing definition, A & R Express "owns . . . a commercial vehicle . . . ." The question then becomes whether A & R Express "engaged in a business affecting interstate commerce," in connection with the leased 2006 Freightliner. As the trial court held, that answer is no. Instead, A & R Express was involved in the business of receiving a fee for allowing S A & R Trucking to use the commercial vehicle. Indeed, the definition of an "employer" more aptly and specifically applies to S A & R Trucking. It is undisputed that S A & R Trucking leased the 2006 Freightliner, had sole control of the vehicle with respect to the trucking business that it ran, and "assign[ed] [an] employee[] to operate it." For the purposes of the FMCSR, Altaye was an employee of S A & R Trucking, because he was an independent contractor assigned to drive the 2006 Freightliner.

---

vehicle pursuant to a lease providing for the use of the motor vehicle by the lessee for a period that is greater than 30 days." While A & R Express could certainly be considered a "lessor . . . pursuant to a lease providing for the use of [the 2006 Freightliner] by the lessee for a period that is greater than 30 days," there is nothing in the record to suggest that A & R Express was "in the business of leasing motor vehicles." Instead, the record shows only that A & R Express was the lessor of a single motor vehicle—the 2006 Freightliner. Thus, A & R Express's argument that it should be excluded from being considered an owner is without merit.

A & R Express was almost entirely detached from the trucking business being operated by S A & R Trucking and Altaye. Both Hasan and Adnan testified that A & R Express was not involved in obtaining jobs, dispatching drivers, or collecting fees from companies for which deliveries were made. Further, A & R Express did not supervise Altaye, pay him, collect his reports, or ensure that he complied with regulations regarding driving time. While A & R Express recommended Altaye to S A & R Trucking, all parties involved agreed that it was in S A & R Trucking's sole discretion whether to hire Altaye. A & R Express's only responsibility was to pay money associated with fees and repairs for the 2006 Freightliner. Even though A & R Express had the responsibility to pay for repairs, A & R Express was not informed of repairs until they were already in progress or completed. Most tellingly, it was undisputed that Adnan, as the sole owner of A & R Express, did not know that Altaye was on the job in Wyoming until Adnan was informed of Altaye's death.

In sum, although A & R Express was the registered owner of the 2006 Freightliner, A & R Express was not an employer as contemplated by the FMCSR. Consequently, A & R Express's status as the registered owner of the 2006 Freightliner did not render A & R Express subject to the regulations. Rather, under the FMCSR, Altaye was S A & R Trucking's employee, and S A & R Trucking was his employer under 49 CFR 390.5.

Next, plaintiff asserts that Michigan law alone subjected A & R Express to liability under the owner's liability statute. As discussed, A & R Express is considered an "owner" under MCL 257.37(b). To use A & R Express's status as an owner of the 2006 Freightliner to establish liability, plaintiff first relies on MCL 257.401(1), which provides that "[t]he owner of a motor vehicle is liable for an injury caused by the negligent operation of the motor vehicle whether the negligence consists of a violation of a statute of this state or the ordinary care standard required by common law."

However, plaintiff does not address the fact that the statute applies to "an injury caused by *the negligent operation* of the motor vehicle . . . ." MCL 257.401(1) (emphasis added). Rather, plaintiff's claims against A & R Express are that the 2006 Freightliner was negligently maintained, inspected, and repaired. Indeed, in plaintiff's brief on appeal, the only citations are to statutes and regulations regarding the inspection, maintenance, and repair of brakes. In other words, plaintiff has not alleged any "negligent operation," of the 2006 Freightliner—in fact, plaintiff argues the exact opposite, noting that several Wyoming Highway Patrol troopers testified there was no evidence of driver error. Therefore, plaintiff's reliance on MCL 257.401(1) is misplaced, and renders the arguments regarding owner's liability without merit.

Plaintiff's last effort to hold A & R Express liable for Altaye's death is a citation to MCL 257.683(1), which states that, "the owner shall not cause or knowingly permit to be driven or moved on a highway a vehicle . . . that is in such an unsafe condition as to endanger a person . . . ." Thus, the plain language of that statute puts liability on the owner of a motor vehicle where the owner "cause[s] or knowingly permit[s]" an unsafe vehicle to be driven on a highway. See MCL 257.683(1). As discussed throughout this case, A & R Express provided S A & R Trucking with the sole discretion and power to dispatch Altaye and the 2006 Freightliner on jobs. Similarly, A & R Express was not involved in decisions to repair the truck, take it off of the road when it was in an unsafe condition, or to encourage Altaye to complete a job. In other words, there is nothing on the record to suggest that, on December 19, 2015, A & R Express caused or knowingly

permitted Altaye to drive the 2006 Freightliner in an unsafe condition. Indeed, as previously noted, A & R Express did not know that Altaye was even driving the 2006 Freightliner in Wyoming at that time. Consequently, the final statute cited by plaintiff, MCL 257.638(1), also does not impose liability upon A & R Express. Therefore, plaintiff's arguments with respect to this issue are without merit.[5]

## C. JOINT VENTURE

Plaintiff argues that even if the trial court properly determined that A & R Express did not have a duty to inspect, maintain, and repair the 2006 Freightliner's brakes, summary disposition was still improper because A & R Express shared liability with S A & R Trucking as members of a joint venture. We disagree.

### 1. APPLICABLE LAW

Joint ventures "have been defined as associations to carry out a single business enterprise for a profit." *Alfieri v Bertorelli*, 295 Mich App 189, 199; 813 NW2d 772 (2012). A joint venture has six elements:

(a) an agreement indicating an intention to undertake a joint venture;

(b) a joint undertaking of

(c) a single project for profit;

(d) a sharing of profits as well as losses;

(e) contribution of skills or property by the parties;

(f) community interest and control over the subject matter of the enterprise. [*Meyers v Robb*, 82 Mich App 549, 557; 267 NW2d 450 (1978).]

### 2. ANALYSIS

Plaintiff argues the trial court erred by deciding that there was a lease agreement, instead of an agreement to engage in a joint venture. Specifically, plaintiff argues that the trial court failed to consider Adnan's affidavit, in which he described A & R Express and S A & R Trucking's business relationship as a "joint venture." As is clear from the specifics of plaintiff's arguments, plaintiff's primary challenge is to the first element of a joint venture, which requires "an agreement

---

[5] Having concluded that plaintiff's arguments under the owner's liability statute are without merit, A & R Express's argument that the FMCSR preempted that statute has been rendered moot. *TM v MZ*, 501 Mich 312, 317; 916 NW2d 473 (2018) (holding that an issue is moot where a court's decision on an issue "cannot have any practical legal effect upon a then existing controversy") (quotation marks and citation omitted). Consequently, we decline to consider the argument, because "[a]s a general rule, this Court will not entertain moot issues or decide moot cases." *Id.* (quotation marks and citation omitted).

indicating an intention to undertake a joint venture[.]" *Id*. Plaintiff is correct that there was a question of fact regarding that element of a joint venture given the evidence that Adnan did not sign the written lease agreement and that he signed an affidavit representing A & R Express's business relationship with S A & R Trucking as a "joint venture." In light of those facts, a reasonable juror could have determined that there was some sort of agreement between A & R Express and S A & R Trucking "indicating an intention to undertake a joint venture." Despite that conclusion, plaintiff's argument regarding a joint venture still lacks merit.

As noted, in addition to the first element, plaintiff was also required to present evidence that A & R Express and S A & R Trucking engaged in "a joint undertaking of . . . a single project for profit," and that they shared "profits as well as losses[.]" *Meyers*, 82 Mich App at 557. Such was not the case here. The record was abundantly clear that S A & R Trucking was engaged in its own trucking business, only a small part of which was connected to A & R Express. Specifically, there was unrebutted testimony that S A & R Trucking had about five other drivers, trucks, and trailers reporting to it. Those drivers, trucks, and trailers were not associated in any manner with A & R Express. Furthermore, the profits gained and losses suffered by S A & R Trucking associated with those other entities were not shared with A & R Express. While A & R Express was entitled to a portion of profits associated with the 2006 Freightliner, there was no evidence that A & R Express would provide funds if S A & R Trucking was suffering losses in its business. Indeed, to the contrary, both Hasan and Adnan testified that the two companies neither mixed budgets nor provided financial assistance to one another. Instead, when the 2006 Freightliner was used for a job, S A & R Trucking would take 7% of the entire fee received, distribute payment to Altaye, pay the costs associated with the 2006 Freightliner, and then remit the remainder of the sum to A & R Express. If S A & R Trucking was experiencing a loss in regards to the other drivers, trucks, and trailers, it was not permitted to recoup part of that loss from A & R Express's portion of the fees related to the 2006 Freightliner. The most telling factor regarding the financial independence of the two businesses, though, is that S A & R Trucking issued a 1099 tax form to A & R Express at the end of the year. Presumably, if the two entities were actually engaged in a joint business venture, S A & R Trucking would not be providing tax documents to A & R Express as if it was an independent contractor.

In sum, A & R Express and S A & R Trucking were not engaged in "a joint undertaking of . . . a single project for profit," in which they shared "profits as well as losses[.]" See *Meyers*, 82 Mich App at 557. That same evidence also shows there was no "community interest and control over the subject matter of the enterprise." See *id*. Stated differently, considering that A & R Express's bottom line was unaffected by the performance of S A & R Trucking's business as a whole, there was not the establishment of a community interest. Instead, A & R Express's interest was limited solely to the income received and costs paid out regarding the 2006 Freightliner.

The undisputed description of how the relationship between the companies worked also makes it clear that there was not "community . . . control over the subject matter of the enterprise." See *id*. Both Hasan and Adnan testified that A & R Express was not involved in any decisions related to S A & R Trucking's business. Indeed, the record showed that S A & R Trucking exclusively determined what jobs would be performed by Altaye while he was driving the 2006 Freightliner, dispatched Altaye to those jobs, paid Altaye, and issued him a 1099 income tax form. Altaye, who was required to fill out daily logs regarding his inspections of the 2006 Freightliner and the time he spent driving and on duty, submitted those documents to S A & R Trucking. Altaye

also reported any and all necessary repairs to S A & R Trucking, which approved of any given repairs. Hasan and Adnan also agreed that S A & R Trucking had made the decision to hire Altaye, and that under the terms of their business relationship, A & R Express's recommendation to hire Altaye was not in any way binding on S A & R Trucking. In short, A & R Express had no control over any aspect of S A & R Trucking's business, especially considering this analysis only covered the portion of S A & R Trucking's business that specifically related to the 2006 Freightliner titled to A & R Express. In regards to the other portions of S A & R Trucking's business, A & R Express was completely and entirely uninvolved. Therefore, plaintiff also failed to present any evidence that S A & R Trucking and A & R Express had "community . . . control over the subject matter of the enterprise." See *id*.

Thus, there was no question of fact that the business relationship between S A & R Trucking and A & R Express did not fulfill all of the elements of a joint venture. The trial court did not err by granting summary disposition in favor of A & R Express on that issue.[6]

### III. A & R EXPRESS'S CROSS-APPEAL

A & R Express argues the trial court improperly granted summary disposition in favor of Canal. We disagree.

### A. STANDARDS OF REVIEW

"This Court reviews de novo whether a trial court properly granted a motion for summary disposition." *Barnard Mfg Co*, 285 Mich App at 369. "When deciding a motion under MCR 2.116(C)(9), a trial court considers the pleadings alone, accepting as true all well-pleaded allegations, to assess the sufficiency of a defendant's defenses." *Vayda v Lake Co*, 321 Mich App 686, 692; 909 NW2d 874 (2017). "Summary disposition under MCR 2.116(C)(9) is proper when the defendant's pleadings are so clearly untenable that as a matter of law no factual development could possibly deny the plaintiff's right to recovery." *Id*. at 693 (quotation marks and citation omitted). In reviewing a grant or denial of summary disposition under MCR 2.116(C)(10), this Court considers "the pleadings, admissions, and other evidence submitted by the parties in the light most favorable to the nonmoving party. Summary disposition is appropriate if there is no genuine issue regarding any material fact and the moving party is entitled to judgment as a matter of law." *Sallie*, 297 Mich App at 117-118 (quotation marks and citations omitted).

---

[6] Having reached this conclusion, A & R Express's alternative argument that summary disposition was also warranted because of Altaye's fault in the accident has been rendered moot, and we decline to consider it. *TM*, 501 Mich at 317 (holding that "[a]s a general rule, this Court will not entertain moot issues or decide moot cases," and that an issue is moot where a court's decision on an issue "cannot have any practical legal effect upon a then existing controversy") (quotation marks and citation omitted). Even so, A & R Express's argument is without merit because there were obvious factual disputes regarding the assignation of fault, which would have been required to be left to the jury to decide. *Alfieri*, 295 Mich App at 197 ("The extent of a plaintiff's fault is a question for the jury.").

"Insofar as the motion for summary disposition involves questions regarding the proper interpretation of a contract, this Court's review is de novo." *Johnson v USA Underwriters*, 328 Mich App 223,233; 936 NW2d 834 (2019).

## B. LAW AND ANALYSIS

We once again note that the parties have made every attempt, both during the trial court proceedings and now on appeal, to obfuscate the issues and confuse the relevant facts. We have undertaken the task of condensing the issues and focusing the analysis on the facts and law deemed relevant. In doing so, the outcome is clear—Canal was entitled to summary disposition because it issued the policy A & R Express requested, and that policy did not provide coverage for the damages requested.

"An insurance policy is similar to any other contractual agreement, and, thus, the court's role is to determine what the agreement was and effectuate the intent of the parties." *Hunt v Drielick*, 496 Mich 366, 372-373; 852 NW2d 562 (2014) (quotation marks and citation omitted). "The language of insurance contracts should be read as a whole and must be construed to give effect to every word, clause, and phrase." *McGrath v Allstate Ins Co*, 290 Mich App 434, 439; 802 NW2d 619 (2010). "When the policy language is clear, a court must enforce the specific language of the contract." *Id*.

"First, it must be determined whether the policy provides coverage to the insured, and, second, the court must ascertain whether that coverage is negated by an exclusion." *Hunt*, 496 Mich at 373 (quotation marks and citation omitted). "Clear and specific exclusionary clauses must be given effect, but are strictly construed in favor of the insured." *McKusick v Travelers Indemnity Co*, 246 Mich App 329, 333; 632 NW2d 525 (2001). "However, it is impossible to hold an insurance company liable for a risk it did not assume, and, thus, clear and specific exclusions must be enforced." *Hunt*, 496 Mich at 373 (quotation marks, citations, and alterations omitted).

In this case, A & R Express obtained an insurance policy with Canal regarding the 2006 Freightliner. The policy contained the following endorsement:

**WARNING: IMPORTANT NOTICE**

The policy to which this endorsement is attached is supplemental insurance and does not afford full-time protection. Non-trucking insurance is only available to "insureds" operating under a full-time lease. It is limited to non-business use of the "insured's" "autos". It does not afford coverage for any "auto" while being used as a public or livery conveyance. This policy has been issued in reliance on the representation that the "insured" is under full-time lease, that the lessee has taken possession and control of the "autos", that the lessee is providing insurance covering the "autos" and that the lessee is satisfying all governmental requirements for insurance.

Liability Coverage for a covered "auto" described in the Schedule is changed as follows:

1. The following exclusions are added:

    This insurance does not apply under any coverage to:

    a. A covered "auto" while used to carry property in any business.

    b. A covered "auto" while used in the business of anyone to whom the "auto" is rented or leased.

    c. A covered "auto" while being operated with permission of any lessee.

    d. A covered "auto" while under dispatch by a lessee, including unladen return trips.

    e. A covered "auto" under authorization or dispatch when the purpose of the trip or return trip is service, repair or maintenance of the "auto".

2. Who Is An Insured does not include anyone engaged in the business of transporting property by "auto" for hire who is liable for your conduct.

Thus, the plain and unambiguous language of the endorsement establishes that the policy does not provide liability coverage for accidents where the vehicle was "used to carry property in any business." It is undisputed that Altaye was driving the 2006 Freightliner while carrying property—Bentomats—in the course of business at the time the accident occurred.

This Court is required to enforce policy exclusions that are clear and specific. *Hunt*, 496 Mich at 373. Because the language in the preceding endorsement can only be described as clear, specific, and unambiguous, it must be enforced as written. See *id.* As our Supreme Court held in considering a nearly identically-worded exclusion in *Hunt*, "the clause makes clear that there is no coverage when the accident occurs during the time that the semi-tractor is engaged in conveying property from one place to another in any business." *Id.* at 375-376. Because Canal did not provide liability coverage for the 2006 Freightliner when it was carrying property in the course of business, as Altaye was doing in this case, the accident in question did not fall under the policy. Consequently, absent public-policy-related reasons for reformation argued by A & R Express, the trial court's order granting summary disposition regarding liability coverage was not erroneous.

The trial court also did not err by holding that the Canal policy did not provide collision coverage for property damage to the 2006 Freightliner. Specifically, the policy contains an area where collision coverage would be listed and the premiums for such coverage would be detailed. When A & R Express added the 2006 Freightliner to the policy, those sections were left blank. The language of the insurance policy was unambiguous that no coverage existed when such sections were left blank. Because "the policy language is clear," this Court must "enforce the specific language of the contract." See *McGrath*, 290 Mich App at 439. Consequently, the trial court did not err when it found the Canal policy did not provide coverage for the value of the 2006 Freightliner in the accident. *Id.*

A & R Express attempts to escape the effect of the policy language by making an array of different arguments. The first and most significant argument is that the trial court was required to reform the policy to provide coverage required under the no-fault act, MCL 500.3101 *et seq.*, considering that the 2006 Freightliner was registered, and A & R Express was incorporated, in Michigan. Despite A & R Express's best attempts to obscure the law on that issue, applicable and binding caselaw establishes the opposite.

In a recent opinion, *Johnson*, 328 Mich App at 238-239, this Court reiterated the proper framework for analyzing whether an automobile insurance policy violates public policy:

> "It is a 'bedrock principle of American contract law that parties are free to contract as they see fit, and the courts are to enforce the agreement as written absent . . . a contract in violation of law or public policy.' " *Corwin v DaimlerChrysler Ins Co*, 296 Mich App 242, 256; 819 NW2d 68 (2012) (citation omitted). "[W]hen reasonably possible, this Court is obligated to construe insurance contracts that conflict with the no-fault act and, thus, violate public policy, in a manner that renders them 'compatible with the existing public policy as reflected in the no-fault act.' " *Id.* at 257 (citation omitted). Therefore, reformation is the appropriate remedy when such a contract violates law or public policy. *Id.* Whether a contract is against public policy

depends upon its purpose and tendency, and not upon the fact that no harm results from it. In other words, all agreements the purpose of which is to create a situation which tends to operate to the detriment of the public interest are against public policy and void, whether in the particular case the purpose of the agreement is or is not effectuated. For a particular undertaking to be against public policy actual injury need not be shown; it is enough if the potentialities for harm are present. [*Mahoney v Lincoln Brick Co*, 304 Mich 694, 705; 8 NW2d 883 (1943) (quotation marks and citation omitted).]

Thus, in pertinent part, the *Johnson* panel held that a contract can be reformed when it contravenes the no-fault act. See *Johnson*, 328 Mich App at 238.

Initially, A & R Express contends that the lack of collision coverage in the policy violates that rule and requires reformation. A & R Express asserts that Adnan informed Bye Insurance of the request for collision coverage and therefore, under North Carolina agency law, Canal is deemed aware of that request as well. In support of that argument, A & R Express refers this Court to text messages[7] between Adnan and a Bye Insurance agent, in which Adnan requests "physical damage" coverage for the 2006 Freightliner. A & R Express then posits that this request for "physical damage" coverage required Canal, as the principal to Bye Insurance's agent, to provide collision coverage. Even assuming that all of these things are true, A & R Express's argument still fails because it has not provided any valid legal ground for the reformation of the contract to provide collision coverage.

A & R Express contends that the failure to provide collision coverage violates the no-fault act, and thus, public policy. However, our Supreme Court has been clear that collision coverage is not required under the no-fault act:

Our no-fault act requires owners to carry certain categories of insurance. Mandatory coverages include personal injury protection and property protection benefits. MCL 500.3107, 500.3121. Other types of coverage, however, are not mandatory, but purely a matter of contract. Collision coverage plainly falls into the latter category: our no-fault scheme does not mandate it. [*Universal Underwriters Ins Co v Kneeland*, 464 Mich 491, 500; 628 NW2d 491 (2001).]

Thus, A & R Express's argument that Canal's policy specifically contravened the no-fault act by not including collision coverage is without merit. See *id*.

Next, A & R Express once again attempts to confuse the issue by arguing that Canal was required to issue a written denial of collision coverage under the no-fault act, but failed to do so. In making that argument, A & R Express has relied on MCL 500.3037(1) and (4). MCL

---

[7] For the first time on appeal, Canal argues that the text messages should not be considered because they are inadmissible hearsay. Because the hearsay issue was not raised before the trial court, it is not preserved for our review, and we decline to consider it. *Fraser*, 314 Mich App at 103-104.

500.3037(1) states that, "[a]t the time a new applicant for the insurance required by [the no-fault act] for a private passenger nonfleet automobile makes an initial written application to the insurer, an insurer shall offer [certain] collision coverages to the applicant . . . ." Then, MCL 500.3037(4) states that, a rejection of proposed collision coverage "must be made in writing, either on a separate form, as part of the application, or in some combination of these . . . ." A & R Express also notes MCL 500.3012 provides that insurance policies that violate certain statutes "shall, nevertheless, be held valid but be deemed to include the provisions required by such sections . . . ."

These arguments by A & R Express contain fatal errors, the first of which is that A & R Express's attempted reliance on MCL 500.3012 to imply that coverage is misplaced because that statute applies only to violations of MCL 500.3004 through 500.3012. See MCL 500.3012. Notably, that does not include a violation of MCL 500.3037(4). A & R Express's argument regarding MCL 500.3037 is also flawed because that statute applies only to "private passenger nonfleet automobile[s]," which a semitruck is not. Indeed, under the Michigan Vehicle Code, MCL 257.1 *et seq.*, a semitruck falls under the definition of a "commercial vehicle" because it is a "motor vehicle[] designed and used for drawing other vehicles that are not constructed to carry a load independently or any part of the weight of a vehicle or load being drawn." MCL 257.7. The statute requiring a written denial of collision coverage is also inapplicable to this case because it pertains only to "initial written applications" for insurance. MCL 500.3037(1). In the instant case, A & R Express sought to obtain coverage for the 2006 Freightliner in addition to the policy that already existed covering another, unrelated semitruck. Thus, because the request to add coverage for the 2006 Freightliner was not an "initial written application," the issues regarding the semitruck in this case are not contemplated by MCL 500.3037.

Lastly, A & R Express argues that Canal's policy violated certain sections of the FMCSR, which resulted in a public policy violation in Michigan, considering the MCSA's adoption of certain portions of the FMCSR. That argument, like all the others, is misplaced because, as discussed earlier in this opinion, A & R Express is not subject to the FMCSR, and Canal's policy therefore could not have violated the associated sections of the FMCSR and MCSA. Moreover, A & R Express has failed to cite to any sections of the FMCSR or MCSA that *require* an insurer to issue collision coverage. There being no issue regarding a violation of Michigan statutory law, the allegations of public policy violations must also fail. See *Johnson*, 328 Mich App at 238. In sum, even if knowledge of Adnan's alleged request for collision coverage could be imputed to Canal through Bye Insurance, A & R Express's argument would still fail. Consequently, summary disposition was warranted as to the issue of collision coverage.

Next, A & R Express argues that the lack of liability coverage in the Canal policy resulted in a violation of the no-fault act. This argument is founded upon an actual legal basis, considering that the no-fault act does require certain categories of insurance. *Universal Underwriters Ins Co*, 464 Mich at 500. However, the policy issued by Canal did not categorically decline to provide personal injury protection and property protection benefits; rather, the policy just excluded certain accidents from coverage. As noted earlier, the nontrucking use endorsement specifically excluded liability coverage for accidents that occurred when the 2006 Freightliner was carrying property in the course of business, as it was in this case. Thus, A & R Express's actual argument is that Canal's policy should be deemed to violate the no-fault act and public policy because it contains a business-use exclusion.

-15-

This Court has held that the sale of a bobtail policy, which our Supreme Court defined as one that provides "coverage only when the tractor is being used without a trailer or with an empty trailer, and is not being operated in the business of an authorized carrier," *Hunt*, 496 Mich at 373-374 (quotation marks and citation omitted), does not violate the no-fault act or public policy, *Johnson*, 328 Mich App at 245. The *Johnson* panel began by examining this Court's prior opinion in *Integral Ins Co v Maersk Container Serv Co, Inc*, 206 Mich App 325; 520 NW2d 656 (1994):

> A similar question related to bobtail insurance was previously addressed by this Court in *Integral*, 206 Mich App at 331 . . . : Bobtail insurance policies, which do not provide "full coverage," may nonetheless be sold separately from mandatory no-fault policies. In *Integral*, this Court stated that "[a]dmittedly, the [bobtail] policy itself does not provide full coverage." *Id*. However, because MCL 257.520(j) allows insureds to meet the requirements for motor vehicle liability coverage through more than one insurance carrier, and because the truck driver was covered by both a bobtail policy and a policy providing no-fault benefits through another carrier, the practice of selling only bobtail insurance was not against the law. *Integral*, 206 Mich App at 331-332. We reach the same conclusion in this case. [*Johnson*, 328 Mich App at 244-245.]

Notably, the *Integral* panel's decision was limited by the fact that the automobile in question had a separate policy that provided adequate coverage under the no-fault act. See *Integral*, 206 Mich App at 331-332. In the present case, though, the 2006 Freightliner was not covered by any other policy. However, this Court in *Johnson*, 328 Mich App at 245, expanded the holding in *Integral*, to include situations where there was not another policy. Specifically, the *Johnson* Court held "While [the insured] did not procure a no-fault policy with mandatory coverages, [the insurer] was not precluded from selling optional insurance coverages in order to satisfy customers who chose to purchase insurance policies from multiple carriers as allowed under MCL 257.520(j). Thus, [the insurer]'s practice of selling optional insurance coverages does not violate Michigan law." *Johnson*, 328 Mich App at 245.

In light of that conclusion, the *Johnson* Court also held that the sale of only the optional coverage did not violate public policy, even where there was no other insurance in place. *Id*. at 245. In support of that holding, this Court reasoned that "[t]he obligation is on the owner or registrant to procure the proper no-fault coverages." *Id*. at 247, citing MCL 500.3101(1). This Court believed that holding the insurer responsible for determining whether such coverage existed was not appropriate, opining that "[t]o do so would require insurers to verify that every insured who has purchased policies from more than one carrier has procured all the insurance needed to satisfy the no-fault act. It is the role of the Legislature to balance these types of policy considerations, not the role of this Court," and the Legislature placed "the onus on the insured . . . ." *Johnson*, 328 Mich App at 246.

We are bound by the published opinion in *Johnson*. MCR 7.215(C)(2). Canal's policy clearly stated what it covered and what it did not cover. The warning included in the nontrucking use endorsement was not hidden in small text; rather, it was contained in bold text, clear language, and on its own page. Moreover, the endorsement was in plain language and easy to understand. It was the responsibility of A & R Express and Adnan to understand the coverage that the business

needed and to obtain that coverage. Under *Johnson*, Canal cannot be held responsible for A & R Express's failure to do so.

Not surprisingly, A & R Express has posited a convoluted and legally-dubious strategy by which it hopes to escape the conclusion that it was not entitled to liability coverage under the circumstances of the accident. As already noted, A & R Express contends that Bye Insurance was an agent of Canal, and thus, Canal should have been deemed aware that A & R Express was seeking collision coverage and a policy to cover its use of the semitruck in the course of a trucking business. Being aware of that, A & R Express reasons that Canal was required by law to issue a policy in compliance with that request. Among the many reasons that this argument must fail, the simplest is that Adnan specifically requested a "bobtail" policy and admittedly signed the application prepared by Bye Insurance seeking such a policy. Adnan signed that application under a disclaimer stating he personally made all of the choices contained in the application. Thus, A & R Express apparently believes that both Bye Insurance and Canal were required to decipher that he incorrectly used a term of art regarding trucking, even though he had a CDL and was operating an alleged trucking business. However, because A & R Express has not cited any relevant authority that would require such an action by an insurer, we conclude that this issue is without merit.

Affirmed.

/s/ Elizabeth L. Gleicher
/s/ Cynthia Diane Stephens
/s/ Thomas C. Cameron